Paige B. BAYOUD and North Central Investment Corporation, Appellants,

v.

George S. BAYOUD, Appellee.

No. 05–89–01219–CV.

Court of Appeals of Texas, Dallas.

Sept. 12, 1990.

Rehearing Denied Oct. 23, 1990.

Mark M. Donhieser, P. Michael Jung, Dallas, for appellants.

B. Prater Monning III, Carol Wolfram, Dallas, for appellee.

Before McCLUNG, BAKER and THOMAS, JJ.

## OPINION

McCLUNG, Justice.

Paige B. Bayoud (Paige) and North Central Investment Corporation (NCIC) appeal from an adverse judgment rendered in favor of George S. Bayoud (George) in which the trial court made a final determination of damages and a final distribution of funds to conclude a receivership which grew out of a shareholder derivative suit. In thirty-eight points of error Paige and NCIC raise issues involving the trial court's jurisdiction, its division of the corporation's liquidated assets, and its charges against Paige individually. George raises two cross-points. Finding no merit in any of Paige and NCIC's points of error or

George's cross-points, we affirm the judgment of the trial court.

This case has a long and convoluted history, the details of which we shall not repeat here. See Bayoud v. North Central Inv. Corp., 751 S.W.2d 525, 527 (Tex. App.—Dallas 1988, writ denied). The essential facts are as follows. Paige and George are brothers who have been involved in a protracted argument concerning the ownership and operation of NCIC since 1978. The legal activity began when George filed a shareholder derivative suit after Paige allegedly refused to allow him access to the corporate records. The litigation escalated as the brothers argued about whether or not George was a shareholder and whether Paige was liable to George for damages for tortious interference with business relations, for fraud and for conversion, and, ultimately, about the fate of the corporation, which was placed in receivership in 1979. The lawsuit became trifurcated in 1981. A judgment of September 17, 1981, disposed of all issues except ownership and the receivership. That judgment was affirmed by this Court in 1982. In a May 1986 judgment, the trial court held George and Paige to be equal co-owners of NCIC. That judgment was affirmed by this Court on January 28, 1988. The receivership continued until this Court's judgment of March 22, 1988, in which it was held that the receivership had persisted longer than allowed by statute. Id. The trial court was then left with the task of clearing away the debris of what once was NCIC by assessing damages and distributing the liquidated assets. This was done, and a final judgment was entered on June 23, 1989. Any further necessary explanations of the facts will be included where appropriate during discussions of particular points of error.

In their first sixteen points of error, Paige and NCIC assert that the trial court lost jurisdiction over the receivership on February 5, 1982, and, therefore, all orders and judgments relating to the receivership which were rendered after that date are void. This contention is based on this Court's judgment of March 22, 1988. There, a panel of this Court reviewed the

statutory limits placed on administration of a receivership. A court may not administer a corporation in receivership for more than three years unless there is an application for extension, notice to the parties, and a hearing on the extension. Following that, the trial court must enter an order extending the receivership. The extension is limited to no more than five years. TEX. CIV.PRAC. & REM.CODE ANN. § 64.072 (Vernon 1986). Since the record revealed no such application or order for extension, this Court concluded that, by law, the trial court lost jurisdiction over the receivership at the latest by February 5, 1987, eight years after the receivership began. The Court did not attempt, in that opinion, to determine if the receivership had been terminated since 1982, the end of the statutory three year period. Neither did that opinion address whether the trial court's orders issued between February 5, 1982, and February 5, 1987, were void for lack of jurisdiction. Paige and NCIC are now arguing that the receivership ended, and the trial court lost jurisdiction, on February 5, 1982, because the statutory requirements for extension were never met.

■ A judicial act is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985). Errors other than lack of jurisdiction render the judgment merely voidable and must be attacked within prescribed time limits. *Id.* The distinction between a *void* and *voidable* judicial act is as follows:

A void act is one entirely null within itself, not binding on either party, and which is not susceptible of ratification or confirmation. Its nullity cannot be waived.

A voidable act is one which is not absolutely void within itself, but which is binding until disaffirmed, and which may be made finally valid by failure within the proper time to have it annulled, or by subsequent ratification or confirmation.

*Brazzel v. Murray*, 481 S.W.2d 801, 803 (Tex.1972) (quoting *Murchison v. White*, 54 Tex. 78, 81 (1880)).

■ The provisions of Texas Civil Practice and Remedies Code section 64.072 requiring an application for extension, notice to the parties, and a hearing on the matter are procedural in nature. Judgments rendered without observance of statutory requirements which are purely procedural are not void, however irregular or erroneous they may be. *Id.; Ex parte Coffee*, 160 Tex. 224, 328 S.W.2d 283, 291 (1959). Thus, after February 5, 1982, the receivership was unauthorized. It was, however, valid until disaffirmed. The record affirmatively discloses, and no one disputes, that the trial court had jurisdiction of the parties and subject matter, and it had capacity to act as a court. Hence, the continuation of the receivership was merely voidable, not void. There is nothing in the record, however, to indicate that Paige and NCIC complained in 1982 that the section 64.072 requirements were not met. Their untimely complaint was waived. Therefore, the trial court did not lose jurisdiction in 1982. *See Payne v. Snyder*, 661 S.W.2d 134, 141 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). Further, a voidable act of the court, the continuation of the receivership in this instance, should not be set aside at a party's request after that party has actively procured its rendition and subsequently requested, acquiesced in, and consented to many orders handed down in conjunction with that act, as Paige has done. *See Spence v. State Nat'l Bank*, 5 S.W.2d 754, 756 (Tex. Comm'n App.1928, judgm't adopted); *Lauraine v. First Nat'l Bank*, 204 S.W. 1022, 1025 (Tex.Civ.App.—Galveston 1918, no writ). We hold that all acts of the trial court concerning the administration of the receivership of NCIC, enacted between February 5, 1982 and February 5, 1987, were valid, and not void for lack of jurisdiction.

This Court's judgment proclaiming the nullity of the receivership became law on March 22, 1988. It instructed the trial court to "take no future actions regarding the receivership." *Bayoud*, 751 S.W.2d at

529. The trial court did sign and enter several orders, as well as the final judgment in the case, after March 22, 1988. Paige and NCIC claim that those orders and the final judgment are all void for want of jurisdiction. We disagree with this contention.

■ After this Court's March 22, 1988 judgment, the trial court had no choice but to perform those ancillary acts necessary to implement that judgment and dispose of all matters still pending in the case. The trial court properly proceeded in accordance with article 7.06 of the Texas Business Corporation Act. Section A of that article states in pertinent part:

A. The district court for the county in which the registered office of a corporation is located may order the liquidation of the assets and business of the corporation and may appoint a receiver to effect such liquidation, whenever circumstances demand liquidation in order to avoid damage to parties at interest, but only if all other requirements of law are complied with and if all other remedies available either at law or in equity, including the appointment of a receiver of specific assets of the corporation and appointment of a receiver to rehabilitate the corporation, are determined by the court to be inadequate and only in the following instances:

.    .    .    .    .

(3) If the corporation is in receivership and no plan for remedying the condition of the corporation requiring appointment of the receiver, which the court finds to be feasible, has been presented within twelve (12) months after the appointment of the receiver.

TEX.BUS.CORP. ACT ANN. art. 7.06 (Vernon 1980).

On August 25, 1988, the trial court signed an order implementing liquidation of assets and distribution of funds and appointing a liquidating receiver. In its final judgment, signed June 23, 1989, the trial court made its final distribution of funds including, among other things, distributions for attorneys' fees and damages for the injunction undertaking, discussed below, as well as an assessment of the costs of the receivership against Paige. All of this, we hold, the trial court was entitled to do. A rehabilitating receiver had been in place for many years. The parties were still unable to agree about how to conduct the business affairs of the corporation. There certainly is nothing in the record constituting a feasible plan for remedying the problems which led to implementation of the rehabilitating receivership. Under these circumstances, the trial court was authorized to order liquidation of NCIC and distribution of its remaining assets. *Leck v. Pugh*, 676 S.W.2d 180, 181 (Tex.App.—Waco 1984, no writ).

■ Additionally, this Court has held that "[h]owever and whenever a receivership ends, the trial court must conduct the necessary proceedings to discharge the receiver." *Humble Exploration Co. v. Walker*, 641 S.W.2d 941, 945 (Tex.App.—Dallas 1982, no writ). When a receivership ends the trial court has no jurisdiction to conduct a continuing, ongoing receivership. Its jurisdiction is reduced to those limited orders concluding the receivership. The trial court is to obtain a final accounting from the receiver, fix the amount of his fees and order them paid, restore the property held by the receiver to its owner, and enter an order discharging the receiver. *Id.*

In the opinion of March 22, 1988, this court held that the August 1987 appointment of P. Michael Armstrong as receiver was void. Therefore, when the case was returned to the trial court there was no receiver in place to be discharged as in *Humble*. Yet, NCIC property was being held in the court's registry and had to be disposed of. The trial court first had to appoint an article 7.06 liquidating receiver before it could follow the mandate of *Humble*. We hold that the trial court had jurisdiction to conduct the necessary proceedings to implement a liquidating receivership and then to conclude that receivership. Therefore, those acts of the trial court enacted after March 22, 1988, were proper and not void for lack of jurisdiction.

According to this Court's opinion of March 22, 1988, the trial court did not have jurisdiction over the receivership after February 5, 1987. *Bayoud*, 751 S.W.2d at 529. We now hold that the trial court had limited jurisdiction after March 22, 1988. The time period between February 5, 1987 and March 22, 1988 deserves special consideration.

Judicial actions rendered by a court lacking jurisdiction are void. *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987). We find several orders in the record which were signed between February 5, 1987 and March 22, 1988, the time period the trial court lacked jurisdiction over the receivership. The majority of those orders were directly related to the receivership. Those orders were, of course, void ab initio. The December 7, 1987 order providing payment to the receiver and his accountant for their services was stayed by this Court's order of December 10, 1987, and was never complied with due to this Court's March 22, 1988 finding that Armstrong's appointment as receiver was void. An order dated July 30, 1987, denied Paige's motion for termination of the receivership. We can only assume that the other orders touching the receivership and requiring action were complied with. Some of those orders involved steps taken to provide Armstrong with access to NCIC property and records. One order authorized payment of NCIC's quarterly taxes and the purchase of a certificate of deposit. Whether complied with or not, we are not now presented with a justiciable question. The question of the validity of those orders is moot in light of the trial court's proper activities after March 22, 1988. The void orders are of no consequence and do not alter the trial court's end result.

We find one other order in the record which was signed during the time period the trial court lacked jurisdiction over the receivership. That order enjoined the receiver from proceeding with the liquidation sale of NCIC's assets. That order was not void ab initio. During this time period the trial court lacked subject matter jurisdiction over the receivership, but it never lost jurisdiction over the parties. "The remedy of injunction generally acts ... in personam." *Ex parte Davis*, 470 S.W.2d 647, 649 (Tex.1971). The trial court had jurisdiction to issue the injunction order pursuant to rule 683 of the Texas Rules of Civil Procedure. That order was a valid one.

Thus, with the exception of the time period between February 5, 1987 and March 22, 1988, during which time any orders issued in furtherance of the receivership were void but of no consequence, the trial court's orders after 1982 were valid and shall remain undisturbed by this Court. We overrule Paige and NCIC's points of error one through sixteen.

In their points seventeen through twenty-one, Paige and NCIC contend that the trial court erred, in various ways, in awarding to George damages sustained due to the enjoining of the liquidation sale in 1987. In late 1986 the trial court ordered the receiver to sell the noncash assets of NCIC. After two requests by Paige and NCIC that the order be stayed or the receiver enjoined from proceeding with the sale, the trial court, on February 19, 1987, signed an injunction order. The court set bond in the amount of $758,000, but instead of requiring Paige or NCIC to post a bond, the court ordered the receiver to hold that amount "of and from the equity interest of Paige" in NCIC. In the final judgment, dated June 23, 1989, the trial court found that George had been damaged by the injunction in an amount greater than $758,000 but limited his recovery to that amount.

In point of error seventeen, Paige and NCIC argue that the trial court failed to comply with rule 684 of the Texas Rules of Civil Procedure. That rule requires the applicant for a temporary injunction to execute and file a bond with the clerk of the court. TEX.R.CIV.P. 684. Filing a bond is a condition precedent to the issuance of a temporary injunction, and the failure of the applicant to file such a bond renders the injunction void ab initio. *Goodwin v. Goodwin*, 456 S.W.2d 885 (Tex.1970). Here, as stated earlier, the trial court did not require Paige or NCIC to post a bond.

NCIC assets were held by the receiver upon the condition that Paige abide the decision made in the case and pay all damages and costs adjudged against him if and when the injunction was dissolved. We do not find this arrangement to constitute a fatal flaw.

We note, first, that Paige and NCIC have lost their right to complain of the validity of the bond or the injunction order as they should have appealed within proper time limits after the grant of the injunction. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(4) (Vernon Supp.1990). However, we shall address the merits of the point.

The purpose of the bond is to provide protection to the other party for any possible damages occurring as a result of the injunction. The parties cite to no authority which directly addresses this situation, and our research has revealed none. We may, however, look for guidance from a foreign jurisdiction. In light of statutes similar to Texas's rule 684, requiring an applicant for injunction to post a bond conditioned on the requirement that he pay all damages and costs of the injunction, Missouri courts have discussed the validity of depositing funds into the registry of the court when those funds do not have the appearance of a statutory injunction bond. *See State ex inf. McKittrick v. American Colony Ins. Co.*, 336 Mo. 406, 80 S.W.2d 876 (1934); *Aetna Ins. Co. v. Security Printing Co.*, 196 S.W. 93 (Mo.Ct.App. 1917). The Supreme Court of Missouri has stated that a mere deposit in court will not take the place of a statutory injunction bond unless the deposit is made on the conditions required by the statute and the amount deposited adjudged sufficient by the court. *American Colony Ins. Co.*, 80 S.W.2d at 888. In other words, where the adverse party is properly protected, a deposit of funds can be used in place of a bond. We agree that this is sound reasoning. In the instant case, the trial court already had authority over the funds. The trial judge explained in the order granting the injunction that requiring the purchase of a surety bond or a deposit of cash in lieu of a bond was unnecessary and amounted to economic waste. Paige was specifically required to abide the decision made in the case and pay all damages and costs adjudged against him, if any, just as rule 684 requires. The order also specifically stated that any loss suffered by George as a result of the injunction could be recovered from Paige's equity interest, held in lieu of bond. Thus, although the method of compliance was somewhat different from the norm, the purposes of rule 684 were served, and George was adequately protected.

We also note that a party cannot ask something of a court and then complain that the court committed error in giving it to him. *Northeast Tex. Motor Lines, Inc. v. Hodges*, 138 Tex. 280, 282, 158 S.W.2d 487, 488 (Tex.Comm'n App.1942, opinion adopted). Paige and NCIC requested the injunction, twice, and should not now be heard to say it was void, as they are estopped. We overrule point of error seventeen.

In their point of error eighteen, Paige and NCIC claim that the injunction was void because it was issued without notice to them. Rule 681 states that no temporary injunction shall be issued without notice to the adverse party. TEX.R. CIV.P. 681. Paige and NCIC requested the injunction. George, therefore, is the adverse party for purposes of this rule. Lack of notice, therefore, is George's complaint. Paige and NCIC may not complain of errors which do not injuriously affect them or which merely affect the rights of others. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973). We overrule point of error eighteen.

In their point of error nineteen, Paige and NCIC contend that the injunction was void because the injunction order failed to set the cause for trial on the merits as required by rule 683. TEX.R. CIV.P. 683. The Texas Supreme Court has held that where an injunction is issued that does not conform to rule 683, that nonconformity constitutes an abuse of discretion and mandates reversal. *Interfirst Bank v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex.

1986). The order granting the injunction in the instant case contains an attempt to waive the requirement that the cause be set for trial. While we are of the opinion that the rule cannot be waived, we are cognizant of the fact that, in this case, there was no need for a trial. We shall not attempt, however, to resolve this dilemma as the matter should have been appealed over three years ago and has, therefore, been waived. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(4) (Vernon Supp.1990). We overrule point of error nineteen.

In point of error twenty, Paige and NCIC contend there was no evidence or, in the alternative, factually insufficient evidence, to support the trial court's assessment of $758,000 in damages caused by the issuance of the injunction. The burden is on Paige and NCIC to bring forward a record that demonstrates that the complained of ruling of the trial court was erroneous. *L.L.M. v. Mayes*, 733 S.W.2d 642, 643 (Tex.App.—San Antonio 1987, no writ). We have before us the statement of facts of only twelve hearings, some of which begin in the middle of conversation. The trial court's docket sheet reflects many more court settings than just twelve. Further, logic tells us, even if we look only to hearings from the receivership portion of the cause, there were probably more than twelve hearings. We find references in the record to hearings on February 24, 1989, December 12, 1986, and October 24, 1986, but find no statement of facts for hearings on these dates. The trial court, on more than one occasion, stated there had been some evidence on certain issues at hand and the court would allow more later, but after spending hours poring over the record on appeal, we have been unable to locate the evidence to which the trial court referred. We must conclude that we only have before us a partial statement of facts. There is nothing in the record to indicate an agreed statement of facts. We note that Paige and NCIC requested a complete statement of facts be transcribed and placed in the appellate record. It is the appealing party's duty to be certain that everything material to his appeal is actually received by the appellate court. TEX.R.

APP.P. 50(d). When the complaint is that the evidence is factually or legally insufficient to support vital findings of fact or that the evidence conclusively refutes vital findings, this burden cannot be discharged in the absence of a complete or an agreed statement of facts. *The Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.1968). In the absence of a complete statement of facts, we must presume that there was evidence before the trial court to support its findings. *Id.* at 806. We overrule point of error twenty.

In their twenty-first point of error, Paige and NCIC assert that the trial court erred in assessing the injunction damages against Paige personally, that those damages were chargeable, if at all, against NCIC. In their brief, they argue that NCIC sought to enjoin the court-ordered sale of NCIC's noncash assets to prevent the corporation's premature destruction. Paige, the argument continues, joined in the request for this relief, but only in his official capacity as an officer and director of NCIC and not in his individual capacity. The argument ends, without any reference to legal authority, with the assertion that NCIC, and not Paige, was properly chargeable with any damages caused by the injunction because the injunction was instituted primarily for NCIC's benefit. While the argument is not couched in terms of a factual insufficiency argument, we shall so treat it. Again, in the absence of a complete or an agreed statement of facts, we must presume that there was evidence before the trial court to support its findings. *Id.* at 806–07. We note, however, that the partial record which is before us does not support Paige and NCIC's argument.

The record reveals that there have been no officers or directors since February 1980, and this Court's March 22, 1988 opinion states that there have been no directors of NCIC since February 5, 1980. The application for temporary injunction includes the statement that "[n]either party is now an Officer or Director, the terms of office having expired...." That application was filed prior to affirmation of the trial court judgment in the ownership portion of the

cause. References are made to Paige as the sole shareholder of NCIC. The document includes assertions that Paige does not want the assets of NCIC sold; that the receivership should be immediately terminated and the assets of NCIC returned to him; that the sale of the assets would cause irreparable injury and place the property beyond his reach; that he would lose the value of his investment; and that he would have no adequate remedy at law to recover his loss.

Further, Paige's affidavit filed in support of the application includes the following language:

> I do not want any of the assets of NCIC sold and am opposed to any such sale.... I want the real property, personal property, improvements and all other assets intact. If they are sold at this time, I will lose the right to have those assets for my benefit.... I will suffer irreparable injury if the sale continues and so will NCIC.

The record, application, and affidavit do not support the contentions in Paige and NCIC's brief. Further, a jury found Paige and George to be equal co-owners of NCIC. The judgment in the ownership portion of the case was eventually affirmed by this Court. Additionally, the trial court made a finding that both George and Paige, in participating in this litigation, have been "primarily and virtually exclusively" pursuing their own interests, and not those of NCIC. Finally, in its final judgment dated June 23, 1989, the trial court concluded that "but for Paige's request for stay NCIC would have been liquidated and dissolved in 1986 which would have resulted in benefits to George Bayoud having a value in excess of that realized as a result of the 1988 liquidation and dissolution."

■ It is clearly the law that one who wrongfully obtains an injunction is liable to the party enjoined for damages caused by the injunction. *Ferguson v. Tanner Dev. Co.*, 654 S.W.2d 835, 837 (Tex.App.—Houston [14th Dist.] 1983, no writ). We conclude, and under *Englander* we assume, the record amply supports the trial court's ruling that Paige, in his individual capacity,

and not NCIC, should be responsible for the damages caused by the injunction. We overrule point of error twenty-one.

■ In their twenty-second point of error, Paige and NCIC claim there was no evidence or, in the alternative, factually insufficient evidence to support the trial court's assessment of $196,000 in damages proximately caused by the superseding of the 1986 ownership judgment. Paige and NCIC applied to supersede the 1986 judgment declaring George and Paige equal co-owners of NCIC in order to preserve the assets of the receivership pending appeal. The trial court set a supersedeas bond in the amount of $196,000 in response to Paige and NCIC's application for said bond. The trial court's judgment was thereafter affirmed by this Court, and the trial court awarded the entire amount of the supersedeas bond to George.

Again, we have before us only a partial statement of facts and must presume on appeal that the evidence supports the judgment of the trial court. *The Englander Co.*, 428 S.W.2d at 807. We overrule point of error twenty-two.

■ Paige and NCIC next complain, in point of error twenty-three, that the trial court erred in assessing the $196,000 award to George against Paige, personally, instead of against NCIC. Paige and NCIC argue that they jointly requested a supersedeas bond be set in order to preserve the assets of the corporation pending appeal of the ownership portion of the cause. They claim that Paige sought to supersede the ownership judgment in his official capacity and that his interest was only incidental. We are no more persuaded by this argument with regard to this issue than we were when it was used with regard to the injunction.

The application for supersedeas bond was brought by Paige and NCIC, defendants. Nowhere on the document is it stated that Paige makes the application in his representative capacity. The application states that *Paige* prays the court to allow a deposit in lieu of bond pursuant to Texas Rule of Civil Procedure 14c and to authorize the receiver to pay *Paige* from his

share of cash held by the receiver the amount of the supersedeas bond so that he could deposit it with the clerk. The order setting the supersedeas bond, dated September 19, 1986, begins: "After Motion duly filed by Paige B. Bayoud requesting setting of Supersedeas Bond. . . ." The order for payment, dated January 6, 1989, refers to the "cash deposit in lieu of Supersedeas Bond, made by the Receiver of NCIC . . . on the motion of Paige Bayoud." Based on the partial statement of facts before us, we presume the evidence supports the trial court's ruling that the $196,-000 award to George should be taxed against Paige personally, and not against NCIC. *The Englander Co.*, 428 S.W.2d at 807. We overrule point of error twenty-three.

In points of error twenty-four through thirty-five, Paige and NCIC complain of the trial court's awards of attorneys' fees to George. They do not complain of the amounts awarded. In points of error twenty-four through twenty-eight, they complain that the awards constituted error because there is no statutory or other basis authorizing recovery of such fees.

■■■■■■ The general rule in Texas is that, unless provided for by statute or contract, attorneys' fees incurred by a party to litigation are not recoverable against the other party. *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1964). Paige and NCIC base their argument on the fact that there is no contract between the parties and no statutory provision allowing the recovery of attorneys' fees in receivership cases. In some receivership cases attorneys' fees are allowed by way of reimbursement to a petitioning creditor for the services performed through his attorney for the use of other creditors similarly situated. *J.B. Farthing Lumber Co. v. Greenwood*, 197 S.W. 313, 315 (Tex.Civ.App.—Galveston 1917, no writ). We decline to consider this merely a receivership case. This cause was instituted as a shareholder derivative suit after Paige refused to allow George access to NCIC's books and records. This cause remains a shareholder derivative suit. Awarding costs and attor-

neys' fees to successful plaintiffs in shareholder derivative suits is a well established practice. *Prudential–Bache Sec., Inc. v. Matthews*, 627 F.Supp. 622, 625 (S.D.Tex. 1986); *Modern Optics, Inc. v. Buck*, 336 S.W.2d 857, 861 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.). The Texas Business Corporation Act does not expressly authorize the grant of attorneys' fees in a shareholder derivative action. The Bar Committee comment following article 5.14 explains that Texas common law and equitable principles justify such an award. TEX.BUS. CORP.ACT ANN. art. 5.14 comment (Vernon 1980). Attorneys' fees are allowed in shareholder derivative suits where it is shown the suit has conferred substantial benefits on the corporation and its shareholders. *Prudential–Bache Sec., Inc.*, 627 F.Supp. at 625.

■■■■ The record before us reveals that the shareholders, Paige and George, were deadlocked on all issues pertaining to NCIC. The record does not, however, explain in what way the corporation, now dissolved, benefited from the lawsuit. As explained above, the record on appeal is incomplete, and we must assume the trial court had before it sufficient evidence to find that the suit was necessary and that the corporation benefited thereby. *The Englander Co.*, 428 S.W.2d at 806–07; *Modern Optics, Inc.*, 336 S.W.2d at 861. Additionally, article 2.44(C) of the Texas Business Corporation Act provides for recovery of costs and attorneys' fees by a shareholder who must take legal action to enforce his right to examine the corporation's books and records. TEX.BUS. CORP.ACT ANN. art. 2.44(C) (Vernon Supp. 1990). We hold that the trial court had a sufficient legal basis for awarding attorneys' fees to George. We overrule points of error twenty-four through twenty-eight.

In points of error twenty-nine and thirty, Paige and NCIC allege that a portion of the attorneys' fees awarded to George related to the damage and ownership issues which were severed from the receivership issue and that, due to the severance, that portion is not recoverable now. We find no merit in this contention.

The record reveals that attorneys for both Paige and NCIC and for George were paid in 1981 after the judgment in the damage portion. One 1988 order specifically stated the fees it authorized were to cover expenses incurred between October 6, 1986 and October 30, 1988, which was after the ownership judgment was signed. Further, while orders were signed in 1986 providing for payment to attorneys for both sides, Paige and NCIC's attorney actually received payment in 1986 while George's attorneys did not. They finally received the payment authorized by that 1986 order in 1988. All orders reflect the same cause number, 78–9851–I. As we explained earlier, this is and has always been one lawsuit, a shareholder derivative suit. We find the complained of orders authorizing attorneys' fees to have been proper. We overrule points of error twenty-nine and thirty.

■ In points of error thirty-one through thirty-five, Paige and NCIC claim the trial court's awards of attorneys' fees to George are barred by the 1981 judgment, which disposed of the damage issues. The pertinent paragraphs of that judgment are set out below:

BE IT, THEREFORE, ORDERED, ADJUDGED and DECREED and the Court does find that the damage claims asserted by George S. Bayoud individually and derivatively on behalf of North Central Investment Corporation against Paige B. Bayoud be and the same are hereby, in all respects, denied.

.     .     .     .     .

BE IT FURTHER ORDERED, ADJUDGED and DECREED that all damage claims of General Health Services, Inc., Medical Center Hospital of Garland, Inc., George S. Bayoud and Leon M. Hamlin against Paige B. Bayoud and/or North Central Investment Corporation be and the same are hereby denied.

.     .     .     .     .

BE IT FURTHER ORDERED, ADJUDGED and DECREED that all other relief sought by any party herein, which relief is not afforded or denied by separate order of this Court, whether original action, cross-action or third party action, be and the same are in all respects denied.

BE IT FURTHER ORDERED, ADJUDGED and DECREED that all claims by any party herein for damages and which are resolved by this Judgment are hereby severed from the receivership pending in this matter and given Cause No. 81–10819–I, therefore, this Judgment is final as to the claims and issues resolved herein.

Paige argues that attorneys' fees are damages, all damage claims were denied in the 1981 judgment and then severed from the receivership, and, therefore, George's request for attorneys' fees has already been finally adjudicated. We reject this argument.

The 1981 judgment addressed damage claims pleaded by the parties. It originally included a paragraph ordering the receiver to pay $50,000 each to Paige's and George's attorneys. That paragraph was stricken and is not a part of the judgment. However, the inventory and accounting of the liquidating receiver, filed September 26, 1988, clearly shows that $50,000 was paid to G.H. Kelsoe, Jr., attorney for Paige, on October 5, 1981, and $50,000 was paid to B. Prater Monning III, attorney for George, on November 24, 1981. It seems obvious that the damages referred to in the judgment are not attorneys' fees. The judgment allows for additional orders as it states not merely that all other relief sought is denied, but that all other relief sought which "is not afforded or denied by separate order of this Court" is denied. We hold that the trial court was not precluded by the 1981 judgment from awarding attorneys' fees at any time thereafter. We overrule points of error thirty-one through thirty-five.

In their point of error thirty-six, Paige and NCIC claim the trial court erred in assessing the receiver's fees and expenses against Paige individually because there was no evidence or factually insufficient evidence to support a finding that he wrongfully caused the receivership.

The expenses of a receivership are to be paid by the party whose wrongful act brought about the appointment of the receiver. *Theatres of America, Inc. v. State*, 577 S.W.2d 542, 548 (Tex.Civ.App.—Tyler 1979, no writ). Fees for the receiver, his attorney, and his accountant are all included in the term "expenses of a receivership." *See State v. B & L Landfill, Inc.*, 758 S.W.2d 297 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Bergeron v. Session*, 554 S.W.2d 771 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). The trial court found in its final judgment that "the creation and continuity of the receivership of NCIC was caused by the conduct of Paige B. Bayoud." As explained above, in the absence of a complete statement of facts we must assume the trial court had before it sufficient evidence to support this finding. *The Englander Co.*, 428 S.W.2d at 806–07. We overrule point of error thirty-six.

In their points of error thirty-seven and thirty-eight, Paige and NCIC contend that the trial court erred in failing to grant Paige's motion for indemnification from NCIC and in crediting George for an amount corresponding to the amount paid to Paige for his attorneys' fees and other litigation expenses for which Paige had asked indemnification.

On January 6, 1989, Paige, "as officer and director of North Central Investment Corporation," filed a document entitled Motion for Indemnification and Equalization with the trial court. In his motion Paige alleged that in his capacity as officer and director of NCIC, and pursuant to Article X of NCIC's Articles of Incorporation, he is entitled to indemnification for expenses incurred by him in connection with the defense of this lawsuit. The motion, we hold, was a wholly ineffective and inappropriate method for seeking the relief asked for. The trial court did not err in denying it.

The proper vehicle for determination of an indemnity question is a cross-claim by Paige against NCIC under rule 97(e) of the Texas Rules of Civil Procedure or in a separate suit by Paige against NCIC. Tex.R.Civ.P. 97(e); *Stop 'N Go Markets, Inc. v. Executive Sec. Sys., Inc.*, 556 S.W.2d 836, 837 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ). We find no mention of a cross action by Paige against his co-defendant NCIC in their answer to plaintiff George's pleadings. Further, the right to indemnity does not arise until the judgment is either rendered or paid. *Pate v. Tellepsen Constr. Co.*, 596 S.W.2d 548, 552 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Here, Paige filed his motion prior to the time the trial court's final judgment was entered and prior to payment. Thus, Paige's request for relief was not only in improper form, but was premature as well. We overrule points of error thirty-seven and thirty-eight.

George has brought two cross-points on appeal. In cross-point of error number one, George asks that in the event we agree with Paige that the trial court's actions he complains of were void for lack of jurisdiction after February 5, 1982, we find also that those trial court actions taken after that date, but benefiting Paige, are also void. We need not address this contention in light of our disposition of the jurisdiction issue.

In his second cross-point, George argues that we should award to him damages for delay. Although this case has been in litigation for many years and this appeal did serve only to prolong it without changing the trial court's judgment, we cannot say that this appeal has been pursued solely for purposes of delay or without sufficient cause. *See* Tex.R.App.P. 84. Paige had the right to appeal the trial court's judgment for a review of that court's actions, and he did bring most points in a timely manner. Viewing the case from Paige and NCIC's point of view, we cannot state there was no reasonable ground to believe the case would be reversed. *See Beckham v. City Wide Air Cond. Co.*, 695 S.W.2d 660, 663 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). We overrule George's cross-point number two.

We affirm the judgment of the trial court.