**Reverse and Render in part; Affirm in part and Opinion Filed August 11, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01491-CV

**GARY C. EVANS, Appellant**
**V.**
**THE FROST NATIONAL BANK, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 09-15818**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and O'Neill[1]
Opinion by Justice Bridges

In this consolidated appeal, Gary C. Evans appeals three of the trial court's orders in the underlying action to enforce a judgment under the Turnover Statute. Frost appeals the September 26, 2012 "order granting motion to determine amount owed under agreed judgment; the November 21, 2012 "order on Frost's motions for approval of costs and ordering payment by Gary C. Evans; and the December 10, 2012 "order granting receiver's motion for discharge." In four issues, Evans argues the trial court erred in awarding Frost National Bank attorney's fees and costs not recoverable under the Turnover Statute, denying Evans' request for a jury trial on the issue of Frost's attorney's fees, allowing a court-appointed receiver to retain sales proceeds as his fee, and attempting to "materially change" an agreed judgment between the parties. We

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

reverse the trial court's November 21, 2012 judgment awarding Frost $159,385.98 and render judgment that Frost take nothing on its claims for post-judgment attorney's fees, proceeds from the sale of real estate in conjunction with the bankruptcy proceedings, and post-judgment costs. In all other respects, we affirm the trial court's orders.

On November 24, 2009, Frost National Bank filed a lawsuit alleging breach of contract claims in connection with various loans and promissory notes against Van Hunter Development, Investment Hunter, Evans, and Corey Van Trease. Evans and Van Trease both personally guaranteed payment of the notes. Although Frost initially claimed damages in excess of $8 million, Frost and Evans ultimately reached "an agreement on Frost's entitlement to judgment" ("agreed judgment") for $6,795,070.86, plus post-judgment interest on March 22, 2011.

However, by September 20, 2011, Evans had not paid any of the amounts due under the agreed judgment. In an effort to collect on the judgement, Frost filed an application for turnover order and appointment of a receiver to enforce the agreed judgment against Evans. The trial court approved the application for turnover and appointed Dennis Roossien as receiver.

Under the trial court's receivership order, Roossien was to direct Evans to turnover his interest in "any and all ownership rights with respect to any and all shares of stock and/or beneficial interest . . . related to all stock and/or beneficial interest . . . including, but not limited to, Magnum Hunter and Investment Hunter." The order provided Roossien would be paid 10% of the net amount received from any receivership property at the time each sale occurred. Evans largely ignored Roossien and refused to communicate or provide Roossien any accounts tied to his non-exempt assets, so on October 12, 2011, the trial court granted Frost's motion to expand the scope of the amended order appointing receiver, giving Roossien greater range of non-exempt assets to draw upon. The court also granted Frost's motion to order Evans to show cause

for why he should not be held in contempt for not complying with the receivership appointment order.

On December 22, 2011, Frost and Evans mediated their dispute and entered into an agreement whereby the parties stipulated as true a number of facts regarding Evans's ownership of certain securities, set out guidelines as to how Evans would handle his various nonexempt securities, and set out guidelines for how Evans would pay Frost. This agreement was reflected in the February 23, 2012 "agreed order." In this agreed order, Frost withdrew the contempt motion, and Evans' counterclaim against Frost was dismissed. Despite this agreement between the parties, Evans continued to neglect his obligations toward Roossien and the agreed judgment, and Frost consequently filed another motion to hold Evans in contempt on April 12, 2012.

Further, it was discovered that during and shortly after the mediation agreement, Evans misrepresented the status of his Magnum Hunter Resources shares. In late December 2011, Evans transferred over two million Magnum Hunter Resources shares from Oppenheimer to Equities First Holdings without Frost or Roossien knowing or consenting. Evans also misrepresented his shares by claiming they were restricted and therefore not saleable to the public. During this time, Roossien learned that there remained 325,000 Magnum Hunter Resources unrestricted shares in the Oppenheimer account that had been frozen because of past court orders.

On May 25, 2012, Frost and Roossien "filed their application for turnover order in aid of judgment, requesting the court specifically order Evans turn over the Oppenheimer shares to Roossien." On June 1, 2012, the court granted Roossien the sole discretion to liquidate the shares. Between June 11 and June 29, 2012, Roossien sold the 325,000 Oppenheimer shares on the open market for a total of $1,292,812.33, retaining $129,231.25 as fees. Also around this time, a hearing was held on May 23, 2012 in regards to holding Evans in contempt, but the

hearing did not finish and was scheduled to continue on June 1, 2012. Evans failed to appear at the continued hearing on June 1, 2012 and he still refused to satisfy the judgment of $6,795,070.86 plus interest. Frost consequently filed an application for writ of attachment to bring Evans before the court to show cause why he should not be held in contempt for violating [the] Receivership Orders." The trial court granted Frost's application for writ of attachment on June 14, 2012.

Between July and August of 2012, Evans wired three payments directly to Frost, totaling $3,722,485.14 to help satisfy the agreed judgment. However, Roossien could not account for these payments because "Evans did not discuss or notify [Roossien] of [Evans's] intentions to pay th[ese] amount[s] to Frost, nor did Evans attempt to deliver th[ese] amount[s] to [Roossien], nor did Evans copy [Roossien] on any correspondence to Frost regarding [these] payment[s]." On August 29, 2012, Frost filed a motion to determine the amount owed under the agreed judgment, providing mathematical computations and a record of the accrued interest over time to come to a final amount of $149,875.12 ($124,874.15 from the agreed judgment and $25,000 in attorney's fees). Frost did not include any of Roossien's activities as receiver in its calculations. In response, Evans, although claiming his actions were under protest, paid directly to Frost $150,213.54 (the principal of $149,875.12 plus interest[2]).

On September 20, 2012, Frost filed a motion for approval of costs and attorney's fees totaling $144,255.19, incurred since September 19, 2011. On September 26, 2012, the trial court signed an order granting Frost's motion to determine the amount owed under the agreed judgment. The order determined that, as of September 12, 2012, Evans had satisfied the principal and interest due under the agreed judgment along with $25,000 of outstanding attorneys' fees.

---

[2] In its September 26, 2012 order, the trial court noted this amount included an overpayment of $100, which Frost returned.

On September 28, 2012, Evans requested a jury trial on the issue of Frost's reasonable and necessary post-judgment attorney's fees. On October 1, 2012, Evans filed an objection to the trial court proceeding with a hearing on Frost's motion for approval of costs and argued Evans paid the jury fee and claimed that a jury trial on the issue of attorney's fees was already set for January 14, 2013. On October 9, 2012, the trial court requested that Frost segregate its fees into categories to better determine which fees were recoverable. On November 15, 2012, Frost filed a supplemental and amended motion for approval of costs. In the motion, Frost stated it had not, prior to that time, sought recovery of fees associated with the Van Hunter Development bankruptcy case or the sale therein of certain real property. Frost stated it was still not seeking recovery of $57,952.00 associated with the general bankruptcy representation but did include $46,295.50 in fees associated with the sale of certain real property in connection with the bankruptcy proceedings. On November 21, 2012, the trial court found that Frost was entitled to "recovery of its attorney's fees and costs incurred post-judgment," in the amount of $159,385.98 and the court specifically found that Frost's "fees and costs incurred . . . on and after September 19, 2011 to November 13, 2012 in its collection efforts . . . were reasonable, customary and necessary." The court also denied Evans's demand for a jury trial on the attorney's fees issue.

Evans filed a motion for new trial on December 14, 2012, asking the court to "withdraw its November 12, 2012 order" that approved Frost's costs and ordered Evans to pay. Evans requested a new trial on attorney's fees before a jury.

Roossien's final report and motion for discharge were submitted on December 3, 2012. Roossien indicated that, during the time of sales of the Magnum Hunter Resources stock between June 11 and June 29, 2012, he withheld 10% of the stock sales, this percentage totaling $129,231.25, as his fees. The trial court granted Roossien's final report and motion for discharge

on December 10, 2012.  Evans filed an amended notice of appeal from the trial court's rulings on February 20, 2013.

In his first issue, Evans argues the trial court erred in awarding Frost attorney's fees and costs not recoverable under the turnover statute.  Specifically, Evans argues Frost cannot recover (1) post-judgment attorney's fees under the guaranty, (2) fees incurred in relation to bankruptcy proceedings, and (3) certain costs.  Evans argues Frost's enforcement action can only be based on the judgment, not the guaranty, and the terms of the guaranty are no longer in effect.  Relying on res judicata, Evans argues the guaranty merged into the judgment and ceased to exist.

In making this argument, Evans relies on *Henry v. Ins. Co. of N. Am.*, 879 S.W.2d 366, 368 (Tex. App—Houston [14th Dist.] 1994, no pet.), in which a plaintiff could not recover attorney's fees incurred in a garnishment action to enforce a judgment because the garnishment action was a separate suit brought to enforce the judgment and was not itself based on a contract.  Evans argues Frost's enforcement action of the March 22, 2011 agreed judgment was separate from Frost's original suit based on the guaranty agreement.

Evans contends that, when the agreed judgment of $6,795,070.86 became final, the guaranty, including its attorney's fees provision, merged into the judgment and ceased to exist.  *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 n.1 (Tex. 1992).  Therefore, Evans argues, the guaranty cannot serve as a contractual basis for post-judgment attorney's fees.

The doctrine of res judicata operates as a dual system of merger and bar.  *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985).  If a plaintiff prevails in a lawsuit, his cause of action merges into the judgment and the cause of action dissolves.  *Id.*

Here, when the trial court entered the agreed judgment on March 22, 2011, Frost's claims under the guaranty agreement merged into the agreed judgment and were extinguished.  *See Barr*, 837 S.W. 2d at 628 n.1.  No appeal was taken from the March 22, 2011 judgment, and the

trial court's plenary power expired thirty days later. On September 20, 2011, Frost filed its application for a turnover order. That same day, the trial court signed an order appointing a receiver and ordering Frost to turnover all of his shares of stock and ownership interest in any publicly traded company. Frost's recovery of attorney's fees was thereafter governed by the turnover statute.

Regarding the recovery of fees under the turnover statute, Evans argues the turnover statute only allows a party to recover attorney's fees incurred to collect a final judgment. Specifically, Evans argues (1) Frost's attorney's fees incurred in relation to the Van Hunter Development bankruptcy proceedings are not recoverable and (2) Frost's attorney's fees incurred after Evans fully paid the judgment are not recoverable.

Generally speaking, the purpose of Section 31.002, otherwise known as the Turnover Statute, is to aid the collection of final money judgments. *Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas*, 810 S.W.2d 738, 739 n. 3 (Tex. 1991). The turnover statute describes the authority and means by which a judgment creditor may obtain, through the aid of the court, a judgment debtor's property to assist in fulfilling the judgment. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (West 2005). In addition to section 31.002, section 31.007 describes the particular costs parties are to keep track of during a lawsuit so as to correctly determine a final judgment. TEX. CIV. PRAC. & REM. CODE ANN. § 31.007 (West 2015).

Evans complains of the award of $46,295.50 for fees relating to the sale of certain real property in connection with the Van Hunter Development bankruptcy proceedings. The trial court also awarded Frost $24,727.50 in fees relating to actions taken after Evans paid the judgment in full. Evans contends Frost's attorney's fees incurred after the judgment has been paid cannot be attributed to collection of the judgment and therefore do not fall under the turnover statute. Evans further complains of the award of certain costs incurred after the agreed

–7–

judgment was paid in full. The apparent purpose of the turnover statute is to aid the collection of final money judgments. *Schultz*, 810 S.W.2d at 739 n.3. The turnover order was nothing more than a vehicle for the collection of the judgment; once the judgment was paid, the turnover order lost its teeth and was of no further force and effect. *Pandozy v. Beaty*, 254 S.W.3d 613, 617 (Tex. App.—Texarkana 2008, no pet.). The award of $159,385.98 included post-judgment attorney's fees, amounts obtained from the sale of real property in a bankruptcy proceeding, and post-judgment costs. We conclude this award, entered after Evans paid the judgment in full, was error. *See id.* We sustain Evans' first issue.

In his second issue, Evans argues the trial court erred in denying his request for a jury trial on the reasonableness and necessity of Frost's post-judgment attorney's fees. Because we have concluded Frost was not entitled to post-judgment attorney's fees, we need not further address this argument.

In his third issue, Evans argues the trial court erred in allowing the receiver to unilaterally retain sales proceeds as his fees. Evans argues that a trial court cannot pre-set a receiver's fee as a contingency percentage. *See Congleton v. Shoemaker*. 2012 WL 1249406, at *4 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied). Evans further argues that a receiver's fee must be measured by the value of the services rendered. *See Moyer v. Moyer*, 183 S.W.3d 48, 57-58 (Tex. App.—Austin 2005, no pet.).

However, the cases Evans relies on, *Congleton* and *Moyer*, both dealt with courts that pre-set the receiver's fee but never reconsidered their pre-set fee to confirm that it was reasonable. *See Congleton*, 2012 WL 1249406 at *5 ("the record in this case contains no evidence establishing what percentage or amount constitutes a fair, reasonable, or necessary fee"); *Moyer*, 183 S.W.3d at 58 ("in the trial court, no evidence was presented of what would constitute a fair, reasonable, or necessary fee"). In this case, the trial court held an evidentiary

–8–

hearing at the time of the stock sale and heard evidence to determine whether the 10% fee from the result of the sales was fair, reasonable, or necessary.

Receiver's fees are considered court costs and are governed by rules regarding the award of costs. *See* Tex. R. Civ. P. 131, 141; *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 293 (1959); *Hodges v. Peden*, 634 S.W.2d 8, 12 (Tex. App.—Houston [14th Dist.] 1982, no writ). Where a receiver is appointed, taxation of costs of the receivership and the manner of their collection are matters entirely within the sound discretion of the trial court. *Theatres of Am., Inc. v. State*, 577 S.W.2d 542, 547 (Tex. Civ. App.—Tyler 1979, no writ). In this case, Frost requested and received a court-appointed receiver to assist in the collection of the agreed judgment. The trial court conducted a hearing and determined Roossien's fee was fair, reasonable, and necessary. Under these circumstances, we cannot conclude the trial court abused its discretion in permitting Roosien to retain 10% of stock sales proceeds as his fee. *See id.* We overrule Evans' third issue.

In his fourth issue, Evans argues the trial court's September 26, 2012 order is void. Specifically, Evans argues the trial court lacked jurisdiction to modify its judgment.

Other than a trial court's inherent power to enforce its judgment, *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982), a trial court loses jurisdiction over an action once its plenary power expires. *See In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998). Assuming no motions are filed that would increase a trial court's length of plenary power, the plenary power of a trial court lasts thirty days. TEX. R. CIV. P. 329(b)(f). The agreed judgment was signed on March 22, 2011, and no motions were filed that would have extended the trial court's plenary jurisdiction. The September 26, 2012 order stated that "Evans has satisfied the principal and interest due under the agreed judgment on September 12, 2012."

Frost argues so long as outstanding issues exist, a court retains jurisdiction over the receivership proceedings and should wind up the receivership in an orderly way. *Humble Exploration Co., Inc., v. Walker*, 641 S.W.2d 941, 945-46 (Tex. App.—Dallas 1982, no writ); *see Bayoud v. Bayoud*, 797 S.W.2d 304, 310-11 (Tex. App.—Dallas 1990, writ denied). However, the September 26, 2012 order provided that, if Evans prevails on his appeal of the turnover order or any other appeal or claim which decreases the amount Frost has received under the agreed judgment, then the agreed judgment is revived to represent the new, proper amount; the trial court would maintain jurisdiction as to any matter relating to disputes with respect to the agreed judgment; and the plea to the jurisdiction filed by Evans was denied. The order also contains the trial court's determination that Frost's "calculations" of the amounts Evans owed under the agreed judgment were "in all things, proper and adopted by" the trial court. The order made no reference to receivership fees or winding up the receivership.

We have already concluded that, once the agreed judgment was paid in full, the turnover order was of no further effect. *See Pandozy*, 254 S.W.3d at 617. At that point, the trial court's plenary power had long since expired, and so had its powers under the turnover statute. The complained-of portions of the September 26, 2012 order are attempts to modify the March 22, 2011 agreed judgment. A trial court may not issue an order that is inconsistent with the original judgment or that otherwise constitutes a material change in the substantive adjudicative portions of the judgment after its plenary power has expired. *Custom Corporates v. Security Storage, Inc.*, 207 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In addition, post-judgment orders may not require performance of obligations in addition to the obligations imposed by the final judgment. *Id.* We sustain Evans' sixth issue to the extent he asserts the voidness of provisions in the trial court's September 26, 2012 order adopting Frost's "calculations," providing the agreed judgment would be "revived" if Evans prevailed on appeal

–10–

of the turnover order or "any other appeal or claim that decreases the amount Frost [had] received" under the agreed judgment, and ordering the trial court would "retain jurisdiction as to any matter relating to disputes with respect to" the agreed judgment."  Accordingly, we order stricken those portions of the September 26, 2012 order.

We reverse the trial court's November 21, 2012 judgment awarding Frost $159,385.98 and render judgment that Frost take nothing on its claims for post-judgment attorney's fees, proceeds from the sale of real estate in conjunction with the bankruptcy proceedings, and post-judgment costs.  In all other respects, we affirm the trial court's orders.

121491F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GARY C. EVANS, Appellant

No. 05-12-01491-CV      V.

THE FROST NATIONAL BANK, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. 09-15818.
Opinion delivered by Justice Bridges.
Justices Brown and O'Neill participating.

In accordance with this Court's opinion of this date, the trial court's November 21, 2012 order on Frost's motion for approval of costs and ordering payment by Gary C. Evans is **REVERSED** and judgment is **RENDERED** that:

> Frost take nothing on its claims for post-judgment attorney's fees, proceeds from the sale of real estate in conjunction with the bankruptcy proceedings, and post-judgment costs.

The provisions in the trial court's September 26, 2012 order adopting Frost's "calculations," providing the agreed judgment would be "revived" if Evans prevailed on appeal of the turnover order or "any other appeal or claim that decreases the amount Frost [had] received" under the agreed judgment, and ordering the trial court would "retain jurisdiction as to any matter relating to disputes with respect to" the agreed judgment" are **ORDERED** stricken.

In all other respects, the trial court's orders are **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.


Judgment entered August 11, 2015.