NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IMH SPECIAL ASSET NT 168 LLC, et al.,
*Plaintiffs/Appellants/Cross-Appellees*,

*v.*

GREGORY M. BECK, *Intervenor/Appellee/Cross-Appellant*.

No. 1 CA-CV 21-0414
FILED 5-19-2022

---

Appeal from the Superior Court in Maricopa County
No. CV2010-010943
No. CV2010-010990
(Consolidated)
The Honorable James D. Smith, Judge
The Honorable Karen A. Mullins, Judge (retired)

**AFFIRMED**

---

COUNSEL

Snell & Wilmer L.L.P., Phoenix
By Christopher H. Bayley, Benjamin W. Reeves, and James G. Florentine
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Udall Shumway, Mesa
By Joel E. Sannes and Eli T. Enger
*Counsel for Intervenor/Appellee/Cross-Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

---

**M c M U R D I E**, Judge:

**¶1**        Appellants, IMH Special Asset NT 161, LLC and IMH Special Asset NT 168, LLC (collectively "IMH"),[1] challenge the superior court's compliance with our mandate in *IMH Special Asset NT 168 LLC v. Beck*, No. 1 CA-CV 19-0156, 2020 WL 6192846 (Ariz. App. Oct. 22, 2020) (mem. decision). Because the superior court complied with our mandate, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In 2012, the superior court entered summary judgment for IMH in its post-foreclosure deficiency action. IMH was awarded around $8.6 million. The court temporarily froze the judgment debtor's bank accounts pending satisfaction of the judgment. IMH stipulated to releasing the bank accounts and temporarily ceasing enforcement of the judgment if the debtor, among other things, transferred his corporate stock to an entity ("Stockholder," LLC) created by IMH. The court ordered the debtor's shares transferred to Stockholder and appointed a receiver to manage, maintain, and preserve the assets. The transfer included a 9.6% ownership interest in Recorp Partners, Inc. ("RPI"). RPI was the managing general partner of Recorp New Mexico Associates, LP ("RNMA I"), which owns a large land parcel northwest of Albuquerque, New Mexico. Stockholder later acquired 100% of RPI, and the receiver appointed an individual to serve as RPI's sole director and president.

**¶3**        RNMA I was set to dissolve in December 2015. Under the partnership agreement, the dissolution would follow "a liquidation period not to exceed 12 months." No one extended the term before the dissolution date passed. In December 2016, more than 75% of the limited partners gave notice that they were retroactively extending the term.

---

[1]        We refer to IMH in the singular for convenience.

¶4 RNMA I made several capital calls on the limited partners. Only IMH responded to the calls. One of the calls was for funds to repair a well leaking toxic water on the parcel in New Mexico. RPI asserted the funds were necessary to restore the well and preserve the parcel's value. When no capital was provided, the receiver requested authorization from the superior court to direct Stockholder to borrow the money from another IMH subsidiary. The court denied the request, finding the proposed loan contract would allow IMH to foreclose on RNMA I's assets without regard to the fair market value in relation to the loan proceeds. Despite the ruling, RNMA I ultimately borrowed the money from an IMH subsidiary, MRH Lending. IMH asserted that RPI's president did not need the court's permission to exercise his corporate authority to obtain the loan.

¶5 Following RNMA I's final capital call, RPI sent the limited partners notices of default and assigned their interests to the IMH subsidiary that had made the well-repair loan.

¶6 One of RNMA I's limited partners, Appellee Gregory Beck, intervened to oppose the well-repair loan. When RPI called for capital, he initiated discussions with the other limited partners about removing RPI as general partner. He later wrote to the receiver that more than 75% of RNMA I's limited partners had given notice that they were removing RPI as the general partner for cause. RPI asserted that the removal attempt did not comply with the partnership agreement and continued to act as the general partner.

¶7 In January 2019, the superior court found that the Stockholder estate contained only 9.6% of RPI, so the receiver could not manage RNMA I and could not make capital calls or declare that limited partners had forfeited their interests in RNMA I by failing to answer.

¶8 IMH moved to amend the order, arguing the estate included 100% of RPI and the receiver could therefore exercise authority as RNMA I's general partner. In November 2019, the superior court modified the January ruling, finding the estate included 100% of RPI. But the court also found RPI had been removed as general partner and that RPI's acts following removal were *ultra vires*.

¶9 IMH appealed to this court, arguing that RNMA I became a general partnership following the 12-month wind-up period after dissolution and that the superior court erred by finding RPI was removed as general partner. We concluded the limited partners' attempt to extend RNMA I's term was invalid and remanded so the superior court could

determine the effect of RNMA I's failure to wind up by the date set by the partnership agreement.

¶10 On remand, the superior court ordered briefing on the mandate's scope. IMH argued the court had to address whether RNMA I continued as a limited partnership after the twelve-month wind-up period and order the method and manner of RNMA I's liquidation, including deciding whether RNMA I must repay MRH Lending before limited partners receive distributions. Conversely, Beck argued that the mandate required the court to determine whether the loans and capital calls made by RNMA I after RPI was removed were proper wind-up activities. The superior court declined to oversee RNMA I's liquidation, noting that not all of RNMA I's limited partners are parties and that RNMA I is a New Mexico entity with assets comprised only of real property in New Mexico. Instead, the court determined only that the January 2017 capital call and July 2017 loan agreements were *ultra vires* and not proper winding-down acts.

¶11 IMH appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### A. The Superior Court Complied with Our Mandate.

¶12 IMH argues that the superior court erred by failing to order the method and manner of RNMA I's liquidation and by failing to decide (1) the consequences of RNMA I's dissolution date passing, (2) the status of RNMA I as a legal entity after RPI was removed as general partner, and (3) the priority of the loan repayment relative to limited-partner distributions. Beck counters that the court complied with our mandate by finding that RNMA I's term ended and RNMA I was winding up. Although IMH does not challenge that the term ended and that RNMA I was winding up, it argues these findings did not adequately address our mandate.

¶13 We remanded this case to allow the superior court to decide whether the limited partnership was terminated following the 12-month wind-up period or if RNMA I continued to exist as a limited partnership during a wind-up period. The court complied with the mandate by finding that RNMA I was in a wind-up period. IMH asserts the superior court failed to decide the status of RNMA I as an entity. But the superior court's finding that RNMA I is in a wind-up period suggests the continued existence of the limited partnership.

¶14 IMH does not challenge the superior court's affirmative findings, so we do not consider whether the court erred by finding that RNMA I was in a wind-up period and that the January 2017 capital call and July 2017 loan modification agreement, promissory note, and mortgage/security agreement were *ultra vires* and not proper winding down acts. *See Crystal E. v. DCS*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) (appellate review generally limited to specific issues raised by the appellant).

¶15 IMH argues that, because we concluded RNMA I's term could not be retroactively extended, the superior court had to order the method and manner of RNMA I's liquidation and determine whether MRH Lending must be repaid before distributions are made to limited partners. We disagree. As IMH argued in its last appeal, when a receivership is terminated, the scope of a trial court's jurisdiction is limited to matters ancillary to the receivership. *See Bayoud v. Bayoud*, 797 S.W.2d 304, 310 (Tex. App. 1990).

¶16 On remand, the superior court determined RNMA I was in a wind-up period and that the January 2017 capital call and July 2017 loan agreements were *ultra vires*. These findings resolved the dispute correctly before the court, specifically: what effect the passing of RNMA I's wind-up period had upon RPI's authority to issue the January 2017 capital call or enter into the July 2017 loan agreements. The court's findings—that RNMA I remained in a wind-up period and that the January 2017 capital call and July 2017 loan agreements were *ultra vires* and not proper winding-down acts—made it unnecessary to resolve the issues raised by IMH. The court, therefore, did not err by failing to address the method and manner of RNMA I's liquidation and the priority of repayment to MRH Lending. The court's decision not to oversee RNMA I's windup does not leave the partners without access to that remedy. If one or more partners wish to seek judicial supervision, they may do so in New Mexico. *See* N.M. Stat. Ann. § 54-2A-803(D) (upon request by any partner, a New Mexico state court may supervise windup if a limited partnership does not have a general partner following dissolution or for other good cause).

## B. Beck Waived the Argument that the Limited Partners Merely Started RPI's Removal.

¶17 Concerned about the collateral consequences of RPI's removal, Beck cross-appeals and argues the superior court erred by finding that the limited partners removed RPI as RNMA I's general partner rather than merely beginning removal procedures. After Beck notified the receiver

that the limited partners had exercised their right to remove RPI, he requested that the court order RPI take no further action as a general partner. He specifically asserted that RPI had been removed as RNMA I's general partner. In a minute entry filed in November 2019, the court granted Beck's request and found that RPI had been removed as general partner. Because Beck did not appeal that ruling, he waived the argument and we lack jurisdiction to consider it. *Edwards v. Young*, 107 Ariz. 283, 284 (1971) (perfecting appeal within the time prescribed is jurisdictional). Thus, the court's finding remains the law of the case and governs throughout the case's later proceedings. *See Dancing Sunshines Lounge v. Indus. Comm'n of Ariz.*, 149 Ariz. 480, 482 (1986).

## CONCLUSION

¶18        We affirm. On balance, Beck is the successful party and may recover his taxable costs after complying with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

6