**Affirmed and Opinion Filed March 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00732-CV

## ALBERT G. HILL III, Appellant
### V.
## ALBERT G. HILL JR., AND DANIEL L. JACKSON, RECEIVER FOR HILL 3 INVESTMENTS, LLC, Appellees

On Appeal from the 68th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-04523

### OPINION

Before Justices Fillmore, Stoddart, and Whitehill[1]
Opinion by Justice Stoddart

This is an appeal from a final summary judgment ordering the termination and winding up of a limited liability corporation. Albert G. Hill III argues: (1) the evidence raised a genuine issue of material fact about whether the receiver for the company properly calculated the members' capital accounts; (2) the trial court abused its discretion by denying his motion for continuance of the summary judgment hearing; and (3) the trial court abused its discretion by assessing all of the receiver's postjudgment fees and expenses against him. By petition for writ of mandamus, Hill III argues the trial court lacked the power to approve the receiver's applications for fees incurred after judgment was rendered discharging the receiver. We

---

[1] Justice Kerry P. FitzGerald was a member of the original panel and participated in the submission of this case; however, he did not participate in this opinion due to his retirement. Justice Bill Whitehill has reviewed the record and the briefs in this case. *See* TEX. R. APP. P. 41.1(a).

consolidated Hill III's petition for writ of mandamus with this appeal.

For the reasons discussed below, we conclude the summary judgment evidence did not raise a genuine issue of material fact and the trial court did not abuse its discretion by denying Hill III's motion for continuance or by assessing all of the receiver's postjudgment fees against Hill III. We also conclude the trial court had jurisdiction to grant the receiver's postjudgment fee applications. Accordingly, we affirm the trial court's judgment and deny the petition for writ of mandamus.

BACKGROUND

### A. The Prior Suit

Hill 3 Investments, LLC (the Company) is jointly owned by Albert G. Hill Jr. and Hill III. For several years, The Company, the Hills, and other parties were involved in litigation in both federal and state courts. In the state court litigation (the First Lawsuit), the parties litigated several issues primarily related to debts Hill III owed to the Company. The trial court in the First Lawsuit appointed a receiver over the Company in 2008. Approximately two years later, the parties reached a global settlement and agreed to dismiss with prejudice all related litigation, including the claims between Hill III and Hill Jr. involving the Company pending in the First Lawsuit.

Because they relate to the questions presented in this appeal, we briefly describe the proceedings in the First Lawsuit. Pursuant to the global settlement and a court order, Hill III paid the receiver the amount of the debt he owed the Company and the receiver then paid the Compahny's primary obligations, leaving approximately $285,000 in cash in the Company. The receiver filed a final report detailing these transactions in the First Lawsuit on December 10, 2010. The capital accounts shown in the final report indicated Hill III had 48% and Hill Jr. had

52% of the total member capital in the Company.[2] The final report will be discussed in more detail below.

Fourteen months after the final report, Hill Jr. filed an application for distribution of 50% of the funds in the Company's bank account. The trial court granted the application on February 7, 2011. The order recited that after the receiver collected the primary assets of the Company and paid the primary liabilities and the receiver's approved fee applications, approximately $231,000 remained in the Company's bank account. The order further recited that as a 50% shareholder of the Company, Hill Jr. was entitled to 50% of the funds remaining in the Company's bank account. The receiver was ordered to disburse that amount to Hill Jr.

On April 8, 2011, the trial court signed an agreed order dismissing with prejudice all claims that were raised or could have been raised in the First Lawsuit. The order of dismissal provided that it did not preclude the filing of a lawsuit by either Hill III or Hill Jr. that was solely limited to terminating and winding up the business of the Company under section 11.314 of the business organizations code. TEX. BUS. ORGS. CODE ANN. § 11.314 (West 2012). No party appealed the final judgment in the First Lawsuit.

## B. The Current Suit

On April 11, 2011, Hill Jr. filed this suit to terminate and wind up the Company. (The same trial judge presided over both lawsuits.) Hill Jr. alleged the Company could no longer operate because it was hopelessly deadlocked and the receiver had completed his work except for filing tax returns and terminating and winding up the Company. Hill III answered and requested access to the Company's books and records and an accounting. Over the next year, the parties engaged in discovery and presented several discovery disputes to the trial court.

---

[2] The balances of the capital accounts of both members exceeded $850,000. It is undisputed that the members were equal shareholders of the Company.

On April 18, 2012, Hill Jr. and the receiver filed the joint motion for summary judgment and to dissolve the Company that is the subject of this appeal. At Hill III's request, the trial court rescheduled the summary judgment hearing to August 20, 2012, then to October 15, 2012, and finally to December 3, 2012. Hill III filed a response to the motion on November 27, 2012, and argued there was a genuine issue of material fact because member capital in the Company had not been adequately and properly stated in the receiver's final report filed in the First Lawsuit approximately two years earlier. After the summary judgment hearing, the trial court granted the motion in part, but permitted the parties to file additional briefing and evidence on the issue of the calculation of the members' capital accounts and set a hearing for December 21, 2012.

Shortly afterwards, Hill III terminated the services of his attorney and instructed the attorney to file a motion to withdraw, which was done on December 7, 2012. Hill III then filed a motion for continuance of the summary judgment hearing. The motion for continuance was later supplemented by new counsel, based on the request of Hill III's expert for additional supporting documents following a court-ordered meeting with the receiver. The trial court denied the motion for continuance.

At the December 21, 2012 hearing, the trial court signed an order granting the motion for summary judgment and an order closing all outstanding issues. The trial court found it was not reasonably practicable to carry on the business of the Company in conformity with its governing documents. The court ordered the receiver to wind up and terminate the Company and distribute to Hill III any assets remaining after payment of court-ordered receiver fees up to the amount previously distributed to Hill Jr. in the First Lawsuit. After that distribution, any remaining assets of the Company would be split equally between Hill Jr. and Hill III. The receiver was also instructed to file a final fee application.

The trial court signed a final judgment on February 6, 2013, finding the receiver had completed winding up and terminating the Company, distributed the remaining assets of the Company pursuant to the Court's prior orders, and filed a certificate of termination with the secretary of state. The judgment recited that the receiver filed a final fee application, which had been granted. The trial court further determined:

> that the receivership will no longer continue upon the signing of this Judgment, and Daniel L. Jackson is hereby released of all duties as Receiver in the above captioned matter, as well as in the prior lawsuit, Cause No. 08-2578, except for payment of fees approved under the final fee application; filing the final tax returns . . .; payment of any applicable taxes (if any, none is expected); updating the books and records; and, distributing the books and records of Hill 3 Investments as provided herein.

Hill III then filed a motion for reconsideration and motion for new trial on March 8, 2013. The receiver and Hill Jr. filed a joint response to the motion. The receiver also filed an application for fees and expenses incurred for filing the response. The trial court denied the motion after a hearing and granted the receiver's fee application within thirty days of overruling the motion for new trial.[3] This appeal followed.

## DISCUSSION

### A. Summary Judgment

Hill III's first issue contends the summary judgment evidence raised a genuine issue of material fact about whether the receiver correctly calculated the members' capital accounts in the final report filed in the First Lawsuit. In their reply, Hill Jr. and the receiver argued Hill III's expert failed to account for additional contributions made by Hill Jr. and the calculation of the capital accounts was not material because that issue was resolved in the First Lawsuit. On appeal, Hill Jr. and the receiver also argue the expert's affidavit did not raise a genuine issue of

---

[3] The receiver filed two additional fee applications relating to fees incurred during this appeal. The trial court granted both applications.

–5–

material fact because it was speculative and conclusory.

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We apply the well-established standards for reviewing summary judgments. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The summary judgment movant must show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. TEX. R. CIV. P. 166a(c). If the movant meets its burden, the burden shifts to the non-movant to respond and present evidence raising a genuine issue of material fact. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

Affidavits consisting only of conclusions are insufficient to raise an issue of fact to defeat a motion for summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Summary judgment evidence raising only a mere suspicion or surmise of a fact in issue does not show a genuine issue of material fact. *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.). A contention that an affidavit is conclusory raises a defect of substance and may be raised for the first time on appeal. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ). "A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment." *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003). An expert witness's guesswork is not competent evidence to defeat a motion for summary judgment. *See IHS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004).

A district court has jurisdiction to order the winding up and termination of a limited liability company if the court determines it is not reasonably practicable to carry on the entity's business in conformity with its governing documents. TEX. BUS. ORGS. CODE ANN. § 11.314(2).

An entity in the process of winding up must apply and distribute its property to discharge or make provision for discharge of all of its liabilities and obligations. *Id.* § 11.053(a). After the entity has discharged or made adequate provision to discharge all of its liabilities and obligations, the entity must distribute the remainder of its property, in cash or in kind, to its "owners according to their respective rights and interests." *Id*. § 11.053(c).

Hill Jr. and the receiver presented summary judgment evidence that Hill Jr. and Hill III were each 50% owners of the Company, but could not agree on the manner in which the Company would conduct business. The Company's organizational documents required a majority of the members to agree to conduct business. In addition, Hill Jr. and the receiver presented evidence the Company has no on-going business, no future plans to conduct business, and no ability to carry on the Company's business in conformity with its governing documents. The receiver testified in his affidavit he had completed all Company matters except for winding up the Company, dissolving the Company, and making a final distribution of any remaining assets. The receiver stated that (1) all debts owed by the Company had been fully paid except for the receiver's fees and attorney's fees; (2) the Company's only anticipated expense was preparation of the 2011 tax return and a final return on dissolution; (3) all existing receivables owed to the Company by any third party had been paid; and (4) the Company had no claims, causes of action, or counterclaims to pursue.

Hill III does not dispute this evidence. He argues, however, there was an issue of material fact about whether the receiver properly accounted for and calculated the members' capital accounts in the final report filed in the First Lawsuit. Hill III relied primarily on an affidavit of his accounting expert, Richard Claywell.

In his affidavit, Claywell made general observations about the Company's accounting records provided to him dating back to just before Hill Jr. acquired his interest in the Company,

some four years before the receiver was appointed.  Claywell then looked at the receiver's final report filed in the First Lawsuit.  That report included a balance sheet dated May 31, 2008, approximately the date the receiver was appointed, a receipts and disbursement report from May 31, 2008 to December 9, 2010, and a balance sheet dated December 9, 2010, evidencing the property remaining in the receiver's control.

Claywell prepared a balance sheet as of May 31, 2008, based on the accounting records provided to him by Hill Jr.  Claywell's balance sheet showed Hill Jr.'s capital account was about $25,000 less than the capital account shown on the 2008 balance sheet attached to the receiver's final report. Claywell stated the documents he reviewed did not explain this discrepancy.

Claywell noted the 2008 balance sheet attached to the receiver's final report showed Hill III with 52% and Hill Jr. with 48% of the total member capital.  The 2010 balance sheet showed Hill III with 48% and Hill Jr. with 52% of the total member capital.  Claywell opined that because the members were equal owners of the Company, changes in their respective capital accounts should remain the same unless there were additional contributions or withdrawals of capital by one or the other member.  Claywell's review did not explain the change in the relative percentages of capital of the two members.

Claywell also reviewed records produced by the receiver's tax accounting firm, Weaver and Tidwell, and concluded those records contained numerous journal entries to cash.  Claywell stated this was not a normal way of recording expenses and it is not generally good accounting practice to rely primarily on journal entries without underlying transaction documents.  Claywell said he requested the underlying transaction documents, but was told they were not provided.  Claywell concluded the Weaver and Tidwell records were not reliable without the underlying documents.  He did not explain how the Weaver and Tidwell records related to the members' capital accounts.

–8–

Hill III also submitted a declaration[4] by Claywell made after a meeting between the receiver and Claywell before the final summary judgment hearing. In this declaration, Claywell explained that many transactions in the Company's software accounting records provided by the receiver were booked as general journal entries and could not be verified without original source documents. Claywell stated it was generally recognized and accepted in the accounting profession that accounting records heavily based on journal entries are suspect and require examination of original source documents to validate the entries. According to Claywell, the receiver brought a binder to the meeting containing the receiver's work papers and backup documents. Claywell requested the receiver produce the supporting documents, but the receiver refused to do so without a court order. Claywell described the additional documents he needed to verify the member capital account entries and concluded that without these documents Hill III would be unable to confirm the validity of those entries and unable to arrive at a correct calculation of the member capital accounts.

Hill III argues this evidence raises a genuine issue of material fact about the receiver's calculation of the capital accounts. However, Claywell merely noted he was unable to verify all of the Company's accounting records. His calculations may have differed from the receiver's calculations, but the fact that Claywell could not verify the capital accounts from records provided to him does not raise a genuine issue of material fact; such evidence merely allows the trier of fact to speculate about whether the capital accounts are accurate or not. Claywell's affidavit and declaration give rise to no more than a surmise or suspicion that the accounting might be different if additional documents were reviewed.[5] But summary judgment evidence

---

[4] An unsworn declaration complying with statute may be used in lieu of an affidavit required by rule. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001 (West Supp. 2014).

[5] Hill III argues that evidence a defendant did not comply with applicable standards of accounting practice raises a genuine issue of fact, citing *Ling v. BDA&K Business Services, Inc.*, 261 S.W.3d 341, 348–49 (Tex. App.—

that raises no more than a surmise or suspicion of a fact in issue does not show a genuine issue of material fact exists to defeat summary judgment. *Selz*, 152 S.W.3d at 837.

In addition, Claywell's speculations about the calculation of the capital accounts are not material to the distribution of the remaining assets of the Company under the facts of this case. It is undisputed that the receiver collected all of the assets of the Company and paid all of its obligations in the First Lawsuit. In that proceeding, the trial court ordered half of the remaining assets distributed to Hill Jr. The Hill Jr. distribution order in the First Lawsuit merged into the final judgment in that case and is now final. *See Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972) (interlocutory order merges into final judgment and becomes final for purposes of appeal). The order of dismissal with prejudice in the First Lawsuit was an adjudication on the merits. *See Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits."). That order was not appealed and is now final; it is not subject to a collateral attack in this proceeding. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (collateral attacks on final judgments are generally disallowed because of the policy to give finality to judgments); *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 797 (Tex. App.—Dallas 2013, pet. denied) (evidence regarding stock ownership did not raise fact issue where evidence would allow party to collaterally attack prior final judgment based on the parties' settlement agreement). To the extent Hill III seeks to alter the distribution of the Company's assets as ordered by the trial court in the First Lawsuit, he is making an improper collateral attack on the judgment in that case. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (collateral attack seeks to avoid binding effect of judgment in order to obtain specific relief that the judgment currently impedes).

Dallas 2008, no pet.). *Ling* is not applicable because the issue in that case was whether an accountant breached the standard of care in an accounting malpractice case.

Hill III argues the calculation of the capital accounts is material because it would affect the ultimate outcome of the case and is part of the accounting required by the winding-up process. We disagree. The summary judgment order in this case ordered that Hill III receive all of the remaining assets of the Company after payment of the receiver's fees and expenses[6] up to the amount distributed to Hill Jr. in the First Lawsuit. Hill III contends that if the receiver credited his capital account with certain amounts identified by Claywell, the corrections "could have resulted in a credit balance in Hill III's capital account that exceeded Hill Jr.'s, and that potentially would have been distributable upon winding up of the Company." But Hill III presented no evidence of additional assets available to make that distribution. Under the trial court's final judgment, Hill III was already receiving all of the remaining assets of the Company up to the amount previously distributed to Hill Jr. and there is no evidence in the record that the Company had assets available to distribute even that amount. Indeed, the receiver's final prejudgment fee application indicated that all of the remaining assets in the Company had been exhausted to pay the expenses of the receivership.[7]

Claywell's affidavit and declaration did not raise a genuine issue of material fact. *See Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 957 (Tex. App.—Dallas 2013, no pet.) (fact is material if it affects the ultimate outcome of the lawsuit under governing law). The affidavit and declaration fail to state any opinion or evidence material to the issue before the trial court: whether Hill Jr. and the receiver were entitled to an order for the winding up and termination of the Company under section 11.314 of the business organizations code.

---

[6] *See Jordan v. Burbach*, 330 S.W.2d 249, 252 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.) (fees of receiver and his attorney are entitled to priority over other creditors of receivership); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 64.051 (West 2008).

[7] According to the receiver's third and final prejudgment fee application and the order approving it, the remaining assets of the Company have been exhausted to pay Hill III's share of the receiver's fees and expenses during this litigation.

We conclude Hill III's summary judgment response and evidence did not raise a genuine issue of material fact in response to Hill Jr. and the receiver's joint motion for summary judgment. Accordingly, the trial court did not err by granting summary judgment. We overrule Hill III's first issue.

## B. Motion for Continuance

Hill III's second issue contends the trial court abused its discretion by denying his motion for a continuance of the December 21, 2012 final hearing on the motion for summary judgment.

We review a trial court's decision to grant or deny a motion for continuance of a summary judgment hearing for an abuse of discretion. *See Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 696 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In considering whether the trial court abused its discretion, we consider such factors as the length of time the case had been on file before the hearing, the materiality of the discovery sought, whether the party seeking the continuance exercised due diligence in obtaining the discovery, and what the party expected to prove. *Cooper*, 254 S.W.3d at 696.

This case was on file for just over a year when Hill Jr. and the receiver filed the joint motion for summary judgment. The record indicates several discovery disputes were presented to the court during that time period. After the summary judgment was filed, the hearing was rescheduled three times, each at Hill III's request. When the motion was finally heard on December 3, 2012, the trial court again extended the hearing to December 21, 2012, solely on the capital accounts issue and permitted Hill III to obtain a copy of the receiver's accounting software data and to meet with the receiver for one hour to discuss the Company's books and records.

Hill III again moved for continuance. In support of that motion, Claywell signed a declaration indicating he had difficulty opening the software data files produced by the receiver and could not meet with the receiver until shortly before the final hearing due to another commitment. Claywell's later declaration (discussed above), prepared after the meeting with the receiver, stated the receiver refused to produce additional documents without a court order. The declaration, however, did not explain what Hill III expected to prove with the additional documents; it indicated only that additional documents were needed to verify the member capital accounts and that Hill III would be unable to arrive at a true and correct calculation of the capital accounts without those documents.

As discussed above, verification of the capital accounts would not result in a different distribution of the remaining assets of the Company because Hill III was already entitled to all of those assets after payment of the receiver's fees and expenses. After the distribution of half of the Company's remaining assets to Hill Jr. in the First Lawsuit, all that remained was the half allocated to Hill III.

Given the extensive history of this litigation, the trial court's experience with this proceeding and with the First Lawsuit, the number of continuances granted, the limited materiality of the information sought, and the unclear nature of what Hill III expected to prove with the information, we cannot conclude on this record that the trial court abused its discretion by denying the motion for continuance. *See Cooper*, 254 S.W.3d at 696–97. We overrule Hill III's second issue.

## C. Postjudgment Receiver Fees and Expenses

Hill III's third issue raises two arguments: (1) the trial court lacked power to authorize payment of the receiver's postjudgment fees because the final judgment discharged the receiver; and (2) the trial court abused its discretion by charging all of the receiver's postjudgment fees

against Hill III. Hill III's petition for writ of mandamus argues the trial court's orders granting the receiver's second and third postjudgment fee applications are void because they were issued after the trial court lost plenary power over the final judgment.

The trial court's final judgment in this lawsuit found that the receivership should terminate on the signing of the judgment and discharged the receiver of all duties except for certain specified actions. Within thirty days of the judgment, Hill III filed a motion for reconsideration of the summary judgment and for new trial. The receiver filed a joint response with Hill Jr. The next day, the receiver filed an application for payment of fees and expenses in responding to Hill III's postjudgment motion. This was the first postjudgment fee application.

Initially, Hill III objected that the fee application was premature until after the court ruled on the motion for reconsideration and asked for at least seven days after that ruling to file a response to the fee application. However, in his supplemental objections to the fee application, Hill III argued the receiver had no authority to incur fees after the trial court rendered the final judgment, which discharged the receiver. After denying the motion for reconsideration and for new trial, the trial court granted the first postjudgment fee application on May 3, 2013, within the trial court's plenary power[8] over the final judgment. This order required Hill III to pay all of the fees and expenses covered by the postjudgment fee application.[9]

The trial court later granted the receiver's second and third applications for fees and expenses incurred in this appeal. These orders were signed after plenary power over the final judgment had expired and both orders "confirm[] that the Receiver shall remain involved in both

---

[8] Hill III timely filed a motion for new trial that was overruled by a written order signed on April 22, 2013. The trial court had plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after that date or May 22, 2013. TEX. R. CIV. P. 329b(e).

[9] Hill III does not challenge the trial court's prejudgment orders approving the receiver's fees and expenses. Before judgment, the trial court ordered those fees shared equally between Hill III and Hill Jr. Hill III's share of the fees was paid from the remaining assets of the Company and Hill Jr. paid his share directly to the receiver.

–14–

this lawsuit and the appeal while this Court's Final Judgment is pending on appeal." These orders also assessed all of the receiver's fees and expenses against Hill III and are the subject of Hill III's petition for writ of mandamus.

### 1.      The trial court's power to award fees

We begin with the first postjudgment fee application. Hill III argues the trial court's power over the receivership ended with the final judgment because that judgment discharged the receiver and did not retain any jurisdiction over the receivership. We disagree.

First, Hill III recognizes that a trial court has plenary power to grant a new trial or to vacate or modify a final judgment within thirty days after the judgment is signed or within thirty days after all timely motions for new trial or postjudgment relief are overruled. *See* Tex. R. Civ. P. 329b(d), (e). The trial court granted the first postjudgment fee application within thirty days of denying the motion for new trial. Thus, the trial court had jurisdiction at the time it granted the first postjudgment fee application.

Second, the terms of the final judgment discharging the receiver included specific acts that were to occur after the judgment, such as payment of fees approved in the final (prejudgment) fee application, filing tax returns, payment of any taxes, updating the Company books, and distributing the Company books as directed in the judgment. Thus, the trial court in fact retained jurisdiction over the receiver in the final judgment. The trial court had the power to extend or modify the discharge of the receiver in light of new developments after the final judgment. *See Reardon v. White*, 87 S.W. 365, 367 (Tex. Civ. App.—Austin 1905, writ ref'd) (order discharging receiver was amended at next term of court to continue receivership until final disposition of pending suits against the receiver).[10] Thus, when the receiver requested additional

---

[10] Hill III cites no authority to support the proposition that an order discharging a receiver can never be vacated or modified by a later order, and we have found no support for the proposition. *See Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no pet.) (recognizing that probate

fees for responding to Hill III's motion for reconsideration and for new trial, the trial court had the power to grant that relief.

Regarding the second and third postjudgment fee applications, Hill III argues the orders granting the applications were void because the trial court lost plenary power over the final judgment in the main case and did not retain any jurisdiction over the receiver in the final judgment.

The parties have cited several authorities for general propositions relating to the issue, but none are directly on point. However, the authorities do give us guidance in resolving the issue.

The duration of a receivership and its termination are within the sound discretion of the trial court. *Gilles v. Yarbrough*, 224 S.W.2d 720, 722 (Tex. Civ. App.—Fort Worth 1949, no writ) (trial court did not abuse its discretion by denying motion to terminate receivership long after judgment in main case became final). Even after a receivership ends, the trial court has jurisdiction to conduct proceedings necessary to conclude the receivership and discharge the receiver. *See Bayoud v. Bayoud*, 797 S.W.2d 304, 310 (Tex. App.—Dallas 1990, writ denied) ("[h]owever and whenever a receivership ends, the trial court must conduct the necessary proceedings to discharge the receiver," quoting *Humble Exploration Co. v. Walker*, 641 S.W.2d 941, 945 (Tex. App.—Dallas 1982, no writ)). This jurisdiction exists even if the receivership is vacated on appeal or the duration of a corporate receivership extends beyond the maximum duration allowed by statute. *See id.*

Texas has long recognized the independent and ongoing nature of receivership proceedings. As this Court has said, "A receivership is not like an ordinary lawsuit in which the issues may be drawn by the pleadings as soon as discovery is complete, and then promptly tried

court that appointed receiver, after discharging the receiver, corrected and modified the order of discharge to expressly retain jurisdiction over the receivership property).

–16–

to a final judgment, which may then be enforced by execution." *Bergeron v. Session*, 554 S.W.2d 771, 774–75 (Tex. Civ. App.—Dallas 1977, no writ). By way of example, discrete orders in receivership proceedings are an exception to the one-final-judgment rule. *See Art Inst. of Chicago v. Integral Hedging, L.P.*, 129 S.W.3d 564, 570–71 (Tex. App.—Dallas 2003, no pet.). Those orders may be appealed even though final judgment has not been rendered in the main case. *Id.*; *see also Huston v. F.D.I.C.*, 800 S.W.2d 845, 847 (Tex. 1990) (court order resolving discrete issue in connection with receivership is a final adjudication and appealable).

Furthermore, a trial court has jurisdiction to appoint a receiver even while the main case is on appeal. *See Brock v. Kelly*, 85 S.W.2d 274, 275 (Tex. Civ. App.—Texarkana 1935, no writ) ("It is true the district court lost jurisdiction of the issues involved in the main case by virtue of the appeal to this court, but it had the undoubted jurisdiction to appoint a receiver for the property involved in the main suit, should it become necessary and the facts justify it, while the main case was pending on appeal in this court."); *see also United N. & S. Oil Co. v. Meredith*, 258 S.W. 550, 554 (Tex. Civ. App.—Austin 1923) ("It necessarily follows that so long as there is an appeal pending the controversy in the suit which is carried forward into the appeal is a cause of action pending, and the same right to a receiver, to protect the property in litigation, exists after judgment, and pending the appeal, as existed before judgment and pending the trial."), *aff'd*, 272 S.W. 124 (Tex. Comm'n App. 1925, judgm't adopted); *Scales v. Grassman*, 261 S.W. 220, 222 (Tex. Civ. App.—Galveston 1924, writ ref'd) (although trial court lost jurisdiction over issues in main case while on appeal, it had jurisdiction to appoint receiver during pendency of appeal).

In addition, even after issuing an order discharging a receiver, a trial court has power to continue the receivership if circumstances require. *See Reardon*, 87 S.W. at 367; *see also Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no

pet.) (recognizing that appointing court modified its order discharging the receiver after the order was rendered). In *Reardon*, the receiver was discharged in October 1902 without any provision for a pending suit against the receiver. 87 S.W. at 367. At the next regular term of court in March 1903, the appointing court amended the order of discharge to continue the receivership until final disposition of the suits against the receiver. *Id.* On appeal of the plaintiff's judgment against the receiver, the receiver argued the appointing court lacked jurisdiction to set aside the order discharging the receiver. The court of civil appeals rejected this argument stating, "[W]e are thoroughly convinced that at the regular term that followed the previous order the Circuit Court had jurisdiction, upon application properly made, to set aside that order and to retain the receiver within its jurisdiction, if circumstances satisfactory to the court were shown why this should be done." *Id.*

From these decisions, we see that orders resolving discrete issues in a receivership may be appealed even though the main case is not final, *see Huston*, 800 S.W.2d at 847, and judgments in the main case may be final even though a receivership continues, *see Gilles*, 224 S.W.2d at 722. We also see that a trial court has jurisdiction to appoint a receiver even while the main case is pending on appeal. *See Brock*, 85 S.W.2d at 275. We reason from these authorities that at least as long as the main case is on appeal, the trial court has jurisdiction to appoint, control, modify, or otherwise deal with a receivership related to the main case. Further, the trial court has power to modify an order discharging a receiver and to reinstate or authorize the receiver to act if new circumstances arise after the order discharging the receiver and while the main case is on appeal. *See Chimp Haven*, 281 S.W.3d at 633; *Reardon*, 87 S.W. at 367.

Hill III relies primarily on the opinion in *Bishop v. Smith*, No. 09-08-00185-CV, 2009 WL 5205362 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). *Bishop* was a complicated divorce proceeding where the wife's mother also sued the husband and wife to

–18–

collect certain debts. *Id.* at *1. The final divorce decree in *Bishop* did not discharge the receiver; it ordered the receivership to continue in order to oversee the sale of a promissory note and distribution of the proceeds from the sale. *Id.*

In *Bishop*, post-divorce actions of the parties frustrated the sale of the promissory note as contemplated in the original decree. *Id.* at *4. The trial court later confirmed a sale of the note at a significantly reduced price and ordered the parties to pay the receiver's fees. *Id.* The mother objected to paying a portion of the receiver's fees and argued the trial court lacked power to order the fees because it had lost plenary power over the final decree. *Id.* The court of appeals noted that the final decree did not discharge the receiver, but continued the receivership in order to sell the promissory note. *Id.* Thus, "even if the trial court had lost plenary power over most of the issues that had been resolved by the Final Decree, we disagree that the trial court no longer had power to award costs associated with the receivership." *Id.*

Hill III argues that unless the final judgment expressly reserves or retains jurisdiction over the receiver, as was done in *Bishop*, the trial court loses power over the receiver with the final judgment. However, *Bishop* does not address the issue before us because the trial court in that case did not discharge the receiver in the final decree. Thus, the court in *Bishop* was never called on to decide whether, after discharge, a receiver could apply for and be awarded fees incurred to address new developments in the case. Furthermore, nothing in the opinion in *Bishop* supports the contention that an order discharging a receiver cannot be modified in light of later events.

Hill III also relies on the opinion in *Chimp Haven*. The dispute in *Chimp Haven* was about ownership of retired research chimpanzees. 281 S.W.3d at 630. A Travis County probate court appointed a receiver for the chimpanzees. *Id.* at 631. However, the case on appeal was from a judgment of a Bexar County trial court in a separate proceeding. *Id.* at 630. The court of

appeals recognized that "following the discharge of the receiver," the Travis County probate court issued a corrected order of dismissal with prejudice expressly stating it would "retain jurisdiction for purposes of winding up the affairs of the receivership." *Id.* at 633. The court of appeals stated the rule that a court's power over receivership property continues until either the court relinquishes its jurisdiction over the suit or the receiver is discharged and the property restored to the persons entitled to it. *Id.* Because the Travis County probate court expressly retained jurisdiction over the chimpanzees, the court of appeals concluded the Bexar County court lacked jurisdiction to resolve the dispute regarding ownership of the chimpanzees. *Id.*

Although *Chimp Haven* is not on point to the case before us, it recognized that the court appointing the receiver had power to modify an order discharging the receiver if necessary. *See id.* The opinion states the Travis County probate court issued a corrected order of dismissal stating the probate court would retain jurisdiction for purposes of winding up the affairs of the receivership. *Id.* The probate court thus put the parties on notice that additional steps would be required to close the receivership. *Id.* Here, by issuing the orders granting the receiver's postjudgment fee applications, the trial court put the parties on notice that additional proceedings would be necessary to resolve the appeal of the trial court's final judgment and the court authorized the receiver's fees incurred in those proceedings. *Chimp Haven* does not persuade us the trial court lacked jurisdiction to do so.

Hill III cites cases for the general proposition that perfection of an appeal terminates the trial court's jurisdiction and transfers jurisdiction to the court of appeals. *See Panhandle Constr. Co. v. Lindsey*, 72 S.W.2d 1068, 1072 (Tex. 1934) (perfection of appeal, as a general rule, terminates authority of lower court); *Custom Corporates, Inc. v. Sec. Storage, Inc.*, 207 S.W.3d 835, 838 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (orders issued outside a trial court's plenary power are typically void because the court no longer has jurisdiction to act); *In re*

*Brattain*, No. 05-00-00175-CV, 2001 WL 8853, at *1 (Tex. App.—Dallas Jan. 4, 2001, no pet.) (not designated for publication); *Stein v. Frank*, 575 S.W.2d 399, 400 (Tex. Civ. App.—Dallas 1978, no writ) (trial court lost jurisdiction to deny contest to affidavit of inability to give appeal bond when appeal was perfected by posting of appeal bond). We do not disagree with this authority. However, none of the cases cited involved receiverships. Because of the unique nature of receiverships, *see Bergeron*, 554 S.W.2d at 775, and the established jurisdiction of a trial court to appoint a receiver even while the main case is on appeal, *see Brock*, 85 S.W.2d at 275, we do not consider these decisions controlling on this issue.

Hill III asserts the receiver never requested authority to continue serving beyond the final judgment. We disagree. By filing the response to the motion for new trial and the first postjudgment fee application, the receiver sought authority to continue in the case and defend the order discharging him after Hill III challenged the final judgment. In granting the receiver's fee application over Hill III's objection,[11] the trial court effectively authorized the receiver to continue in the case and to incur additional fees and expenses.

Hill III also argues that although the trial court may have had the power to do so, the trial court did not reappoint the receiver after the discharge in the final judgment. As previously discussed, the trial court authorized the receiver to stay in the case by granting the first fee application. In approving the second and third fee applications, the trial court expressly authorized the receiver to continue to participate in the case. This was an exercise of the power Hill III concedes the trial court possessed.

Even if the trial court orders incorrectly failed to reappoint the receiver before

---

[11] At the hearing on the motion for new trial, Hill III objected that the receiver did not have authority to incur fees responding to the motion for new trial because the final judgment terminated the receivership. In response, counsel for the receiver specifically said, "To the extent, Your Honor, I need leave, I would ask for leave with respect to defending ourselves against these claims of misconduct by the receiver while he was receiver . . . ."

authorizing fees, the orders would not be void. The mere failure to follow proper procedure will not render a judgment void. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex. 1995) (per curiam); *see Ex parte Coffee*, 328 S.W.2d 283, 291 (Tex. 1959); *Bayoud*, 797 S.W.2d at 309 ("Judgments rendered without observance of statutory requirements which are purely procedural are not void, however irregular or erroneous they may be."). It is undisputed the trial court had jurisdiction of the parties and subject matter and it had the capacity to act as a court. *See Bayoud*, 797 S.W.2d at 309 (trial court did not lose jurisdiction even though statutory time limit on duration of corporate receivership expired without an application for extension). The absence of language reappointing the receiver in the orders granting the postjudgment fee applications (even if the omission was erroneous) did not deprive the trial court of jurisdiction it would otherwise possess.

Here, the trial court acted within thirty days of denying the motion for new trial to authorize the receiver's fees for postjudgment work. By doing so, the trial court rejected Hill III's argument that the discharge order precluded such fees. Certainly the order granting the first postjudgment fee application could have benefitted from language expressly authorizing the receiver to continue to participate in the case on appeal, like that in the orders granting the second and third postjudgment fee applications. However, in light of the record and the objections before the trial court at the time, the fact the trial court did not include such language in the order did not deprive it of jurisdiction to authorize the receiver to continue to participate in the case on appeal. The trial court did not lose jurisdiction by the mere failure to use more precise language in the order granting the first postjudgment fee application. *See Bayoud*, 797 S.W.2d at 309.

Under the record in this case, we conclude the trial court had jurisdiction to continue the receivership and authorize the receiver to continue to participate in the case while the final

–22–

judgment is on appeal. Therefore the orders granting the second and third postjudgment fee applications are not void.[12]

## 2. Assessment of Receiver Fees and Expenses as Costs

Hill III argues that the trial court had no legal basis to assess 100% of the receiver's postjudgment fees against him and that doing so amounted to an impermissible sanction. We disagree. Receiver's fees are considered court costs and are governed by rules regarding the award of costs. *See* TEX. R. CIV. P. 131, 141; *Jones v. Strayhorn*, 321 S.W.2d 290, 293 (Tex. 1959); *Hodges v. Peden*, 634 S.W.2d 8, 12 (Tex. App.—Houston [14th Dist.] 1982, no writ). "[W]here a receiver is appointed, taxation of costs of the receivership and the manner of their collection are matters entirely within the sound discretion of the trial court." *Theatres of Am., Inc. v. State*, 577 S.W.2d 542, 547 (Tex. Civ. App.—Tyler 1979, no writ).

Under rule 131, the successful party in a suit shall recover from the other party all costs incurred in the suit. TEX. R. CIV. P. 131. Although the trial court has the discretion, for good cause shown on the record, to adjudge costs in another manner, TEX. R. CIV. P. 141, the trial court here chose not to do so. Hill III has not shown that decision was an abuse of discretion. Hill III was not the successful party in the litigation. He opposed the granting of summary judgment and lost. We conclude the trial court did not abuse its discretion by assessing 100% of the receiver's postjudgment fees against Hill III. *See* TEX. R. CIV. P. 131; *Jones*, 321 S.W.2d at 293, 295.

We deny the petition for writ of mandamus and overrule Hill III's third issue.

---

[12] Hill III argues the orders granting the second and third postjudgment fee applications cannot be justified as an exercise of the trial court's inherent power to enforce its judgment because they materially change substantial adjudicated portions of the judgment. Because we conclude the trial court had jurisdiction to issue the orders, we need not decide whether the orders were issued as an exercise of the court's inherent power to enforce the judgment. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

For the reasons discussed above, we deny Hill III's issues on appeal and in the petition for writ of mandamus. Accordingly, we deny the petition for writ of mandamus and affirm the trial court's judgment.

/ Craig Stoddart/
CRAIG STODDART
JUSTICE

130732F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALBERT G. HILL III, Appellant

No. 05-13-00732-CV     V.

ALBERT G. HILL JR., AND DANIEL L.
JACKSON, RECEIVER FOR HILL 3
INVESTMENTS, LLC, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-04523.
Opinion delivered by Justice Stoddart,
Justices Fillmore and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Albert G. Hill Jr., and Daniel L. Jackson, Receiver For Hill 3 Investments, LLC recover their costs of this appeal from appellant Albert G. Hill III.

Judgment entered this 27th day of March, 2015.