# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-23-00491-CV
---

**George Michael Bogle, Appellant**

**v.**

**Karen Bass and Lynn Smith, Not Individually But In Their Capacity as Successor Co-Trustees on behalf of the Amended and Restated George E. Bogle and Nancy T. Bogle Joint Revocable Trust, dated March 2, 2021, Appellees**

---
### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-22-002842, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

George Michael Bogle (Mike) appeals the probate court's July 21, 2023 order granting appellees' motion to modify the court's order terminating receivership (July 2023 order). The probate court ordered that its May 26, 2023 order terminating its court-appointed receiver "was withdrawn" and "of no further force and effect" and ordered that the receiver "shall continue as receiver under the terms of the Court's Order Appointing Receiver dated April 25, 2023 pending final resolution of the appeal."[1] For the following reasons, we affirm the probate court's July 2023 order.

---

[1] In a separate but related appeal, this Court's cause number 03-23-00319-CV, Karen Bass and Lynn Smith in their capacity as successor co-trustees on behalf of the Amended and Restated George E. Bogle and Nancy T. Bogle Joint Revocable Trust, dated March 2, 2021, appeal from the probate court's final judgment in the underlying proceeding. By opinion issued this same date, we affirm in part the probate court's judgment, reverse in part, and remand the

# BACKGROUND

George E. Bogle (George) and Nancy T. Bogle (Nancy) were married and had two children, Katherine Leigh Bogle Leavitt (Katie) and Mike (collectively, the Children).

On January 5, 1999, George and Nancy signed a revocable trust agreement that created the "George E. and Nancy T. Bogle Joint Revocable Trust Dated January 5, 1999" (the 1999 Trust). Assets in the trust include 1,500 shares in USA Managed Care Organization (the Company) and equity ownership in "Bogle Realty."[2] The 1,500 shares in the Company comprised 60 percent of the outstanding shares. Under the terms of the trust agreement, the trustee's powers were "exercisable in the discretion of the Trustee" and included the power "in general to deal otherwise with trust property in such manner . . . and on such terms and conditions as any individual might do as outright owner of the property." The trust agreement named George and Nancy as the original trustees, and it designated George to act as the sole trustee if Nancy became incapacitated. If George was the first to die and Nancy was incapacitated, the trust agreement provided that the Children would serve as successor co-trustees.

On the same day that George and Nancy signed the revocable trust agreement that created the 1999 Trust, George and Nancy signed durable powers of attorney (POA). Nancy's POA appointed George to serve as her agent, "effective on [her] incapacity," and if he was

---

case to the probate court. In that opinion, we provide a more detailed procedural background of the parties' dispute in the underlying proceeding. We do not restate the procedural background here except to the extent it is relevant to the resolution of this appeal. *See* Tex. R. App. P. 47.1.

[2] Mike represents to this Court that "Bogle Family Realty" "owns more than $35 million in commercial real estate, including the buildings from which [the Company] operates."

unable, unwilling, or unavailable to act as her agent, she appointed Mike as the "substitute or successor agent to serve with the same powers and discretions."

In 2020, George became the sole trustee of the trust after Nancy was determined to be incapacitated,[3] and in 2021 and 2022, he purportedly amended the trust agreement in his capacity as Nancy's agent based on her POA. His amendments included replacing Mike as the successor trustee with Karen Bass and Lynn Smith to serve as successor co-trustees. Bass and Smith were employees of the Company. After George became incapacitated in May 2022, Bass and Smith accepted their appointments as successor co-trustees of the trust and began serving in that capacity. After George died on November 26, 2022, Nancy was the primary beneficiary of the trust.

In December 2022, an attorney on behalf of Mike notified Bass and Smith that they were removed as successor co-trustees pursuant to an amendment to the trust agreement that Mike signed in October 2022 on his parents' behalf pursuant to their POAs. Shortly thereafter, Bass and Smith, in their capacity as successor co-trustees, sued the Children seeking declaratory, injunctive, and other relief concerning the validity of the purported amendments to the trust agreement. The parties' dispute included who were the valid successor co-trustees—the Children or Bass and Smith. Because of the parties' dispute, the Company's accounts had been frozen, and Bass and Smith in their capacity as successor co-trustees had been unable to pay expenses to administer the trust, such as paying for Nancy's care.

The probate court appointed a guardian ad litem (GAL) to represent Nancy's interests, and in February 2023, the GAL filed a motion for appointment of a receiver for the trust and its assets "under the rules and principles of equity." *See* Tex. Civ. Prac. & Rem. Code

---

[3] Nancy was diagnosed with Alzheimer's and "require[d] 24-7 medical care."

3

§ 64.001(a)(6) (authorizing court to appoint receiver "in any other case in which a receiver may be appointed under the rules of equity"). The GAL argued that a receiver was necessary because of the "two competing sets of co-trustees over who is in fact entitled to be trustee of the Trust," that the appointment of a receiver would "allow the maintenance of the status quo without favoring one set of purported co-trustees over the other," and that the receivership should last until the court resolves the parties' dispute or until further order of the court. Mike did not oppose the motion, and Bass and Smith filed a response generally agreeing to the appointment of a receiver. They stated that a receiver was necessary not only to provide for Nancy, the primary beneficiary under any version of the trust, but to preserve and manage the assets of the trust, "one of which is a controlling share of [the Company]."

The probate court held a hearing on the motion to appoint a receiver in April 2023, and no party opposed the appointment. Following the hearing, the probate court signed an order granting the GAL's motion and appointing a receiver to serve with a bond. In its order, the probate court made detailed findings concerning the necessity of the receivership, including:

> 18. Due to the ongoing dispute among the Parties regarding which instrument is valid and which persons should properly serve as Co-Trustees, several financial institutions have barred all Parties from transacting business on Trust accounts.
>
> 19. The Trust owns real and personal property in Texas and Arizona, as well as interests in [the Company] and Bogle Realty.
>
> 20. The appointment of a receiver is necessary to protect the rights of the Parties with regard to the Trust, as well as to ensure that the assets of the Trust Estate are preserved and protected, that the obligations of the Trust are fulfilled, and that the primary beneficiary, Nancy Bogle, receives the distributions to which she is entitled.
>
> 21. It is in the best interest of the Parties that the Court appoint the person named below, a Texas resident and qualified person, to be the Receiver and act as a disinterested party who represents and protects the interests of all persons in the Trust Estate.

4

22.   The Parties will suffer irreparable injury unless a receiver is appointed because the harm that will likely be suffered if a receiver is not appointed is imminent and cannot be reasonably compensated in damages.  If a receiver is not appointed, there will be no person who can make distributions to or for the benefit of beneficiary Nancy Bogle, and there will be no person who can pay the Trust expenses and obligations, putting the Trust Estate at risk.

23.   The Parties have no other adequate remedy.

The court also detailed the receiver's powers and duties, including ordering that the receiver "shall take and have complete and exclusive control, possession, and custody of the Trust Estate, and shall secure and protect the Trust Estate."  Shortly after the appointment, the receiver posted a $7 million bond, took his oath, and assumed his duties.

On May 1, 2023, the probate court granted the GAL's motion for partial summary judgment, ordering that the "purported amendments" to the trust agreement were "void and invalid as a matter of law."  A few days later, Mike filed an emergency motion to discharge the receiver, arguing that the probate court's summary judgment ruling "necessarily rendered moot all of the reasons for appointing the Receiver" because (i) under the controlling trust agreement, "Mike and Katie Bogle are the valid successor co-trustees"; (ii) "the Trust's financial institutions have no reason to continue to bar the rightful co-trustees from transacting business on Trust accounts"; (iii) because Bass and Smith are no longer interested parties, they have no risk of suffering irreparable injury in the absence of a receiver; and (iv) "maintaining the receivership may unduly—and detrimentally to the Trust's interest—interfere with the management of [the Company]."

Bass and Smith opposed the termination of the receivership based in part on Mike's actions following the probate court's summary-judgment ruling.  They asserted that the circumstances that justified appointing the receiver still existed, that Mike was engaging in

5

"destructive behavior" toward the Company and its employees, that his actions had interfered with the receiver's authority, and that the need remained for a neutral officer of the court to handle trust matters. The order appointing the receiver enjoined the parties from "interfering with the Receiver's exclusive possession of the Trust Estate," but according to Bass and Smith, Mike arrived at the Company's office in Arizona the day after the probate court's summary-judgment ruling, demanding access to files and attempting to assume control of the Company's affairs. Bass and Smith also argued that the receiver should not be removed before he had the opportunity to complete the business the probate court had appointed him to handle.

Bass and Smith supported their response with the declaration of the Company's chief technology officer (CTO). Concerning Mike's unauthorized attempt to enter the Company office in Arizona, the CTO declared that it was his third attempt, and for the security of the workforce, all employees were sent home. The security incident report was attached to the declaration. On another instance, Mike gained access to the building after hours and took a "large piece of art from the building lobby with him." "Because of [his] actions, [the Company] added security, electronic locks and badge access to its business suite."

Following a hearing in May 2023, the probate court signed its order terminating the receivership and a final judgment that declared the purported amendments to the trust agreement to be void and invalid and that Mike and Katie were the "successor co-trustees of the Trust." In its order terminating the receivership, the court ordered that the receivership was terminated except to the extent necessary for the receiver to inventory all property of which the receiver had taken possession, to render a final accounting of said property, to make disbursements of said property, and to deliver the remaining assets in his custody to the trustees of the trust. The court also provided deadlines for the receiver to complete his duties and ordered

6

the receiver at the conclusion of his duties to apply for an order discharging him and releasing his bond. The court further ordered that the receiver did not have authority over business interests held in the trust.

Bass and Smith appealed the final judgment and suspended enforcement of the judgment by posting a supersedeas bond. Mike, Katie, and the GAL sought reconsideration of the order allowing suspension of the enforcement of the judgment pending appeal because the "Trust requires someone at its helm during the pendency of the appeal—and that should be Katie and Mike" and that the "unintended effect" of the court's order allowing suspension of enforcement of the judgment was to prevent Mike and Katie from acting as co-trustees and to leave the trust "without anyone to act on its behalf." They further asserted that the trust is a "multi-million-dollar Trust," that "[h]undreds of thousands of dollars in income from the corporation need to be deposited into the Trust and distributed for the benefit of Nancy," and that "[s]omeone needs to man the ship during the pendency of the appeal."

In response, Bass and Smith filed a motion to modify the probate court's order terminating the receivership, requesting that the receivership be continued to manage the trust pending the appeal.[4] The probate court had not discharged the receiver, and his bond remained on file. Bass and Smith's motion was supported with an affidavit by Bass with exhibits that identified issues concerning the ongoing management of the trust that would not be addressed during the appeal of the case without a trustee or receiver. There was an ongoing need to pay property taxes, deposit checks, and pay other past-due amounts concerning trust property, and

---

[4] The response was titled "Plaintiffs' Response to Motion for Reconsideration of Supersedeas and Plaintiffs' Motion for New Trial or, Alternatively, Motion to Modify Order Terminating Receivership." For purposes of this appeal, we limit our discussion of the response to the portion seeking to modify the order terminating receivership.

Bass and Smith raised the issue of to whom the receiver should turn trust assets over after he completes his duties. As support for their position that conducting trust business was not possible without a receiver or trustee, they also relied on a Rule 11 Agreement that the parties had entered in June 2023 agreeing that the receiver could make certain specified payments that were due and certain distributions.

At a hearing in July 2023, the probate court advised the parties that the receivership would continue. The probate court thereafter signed the July 2023 order granting Bass and Smith's motion to modify the order terminating receivership. In granting the motion, the court stated that it considered the motion, responses, "all admissible evidence, the arguments of counsel, and the other papers on file with the Court in this matter." The court ordered that the receiver shall continue under the terms of the April 2023 order appointing him "pending final resolution of the appeal," withdrew its order terminating the receivership, and ordered that the termination order was "of no further force or effect." Mike's appeal followed.

## ANALYSIS

In two issues, Mike argues that the probate court abused its discretion by reinstating a receiver "improperly appointed" under Section 64.001(a)(6) of the Texas Civil Practice and Remedies Code and granting Bass and Smith's motion to modify the order terminating receivership.

### Standard of Review

The parties agree that we review the probate court's July 2023 order granting Bass and Smith's motion to modify the order terminating receivership under an abuse of discretion standard. *See Perry v. Perry*, 512 S.W.3d 523, 526 (Tex. App.—Houston [1st Dist.]

8

2016, no pet.) (stating that court reviews order appointing receiver for abuse of discretion); *Hill v. Hill*, 460 S.W.3d 751, 764 (Tex. App.—Dallas 2015, pet. denied) ("The duration of a receivership and its termination are within the sound discretion of the trial court." (citing *Gilles v. Yarbrough*, 224 S.W.2d 720, 722 (Tex. App.—Fort Worth 1949, no writ))); *Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, No. 03-02-00714-CV, 2003 Tex. App. LEXIS 3966, at *7 (Tex. App.—Austin May 8, 2003, no pet.) (mem. op.) (stating that court reviews trial court's decision whether to terminate receivership under abuse of discretion standard).

"When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court." *Akin, Gump, Strauss, Hauer and Feld, L.L.P.*, 2003 Tex. App. LEXIS 3966, at *8 (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). "We may reverse a trial court under this standard only when we find that 'the court acted in an unreasonable or arbitrary manner,'" *id.* (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)), or "'without regard for any guiding rules or principles,'" *id.* (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). "If there is some evidence of a substantive and probative character to support" the trial court's order, "the trial court did not abuse its discretion." *In re Estate of Price*, 528 S.W.3d 591, 593 (Tex. App.—Texarkana 2017, no pet.).

**Did the probate court abuse its discretion?**

Mike argues that the probate court abused its discretion by reimposing a receiver post-judgment under Section 64.001(a)(6) of the Texas Civil Practice and Remedies Code "without any admissible evidence in support" and that Bass and Smith "did not and cannot meet their burden of proving that a receivership is justified in this case." Mike relies on the probate

9

court's summary-judgment ruling that he and Katie were the "valid successor co-trustees" of the trust and argues that no "new circumstances arose" after the probate court terminated the receivership that could justify reimposing it because Bass and Smith's evidence concerned events that happened before the probate court signed the order terminating the receiver. Mike further argues that the continuation of the receivership is harming the interests of the trust and Nancy and that Bass and Smith have other remedies available to protect their rights on appeal.[5]

"Receivership has been termed a 'harsh' remedy, and normally a court will not appoint a receiver if another adequate remedy at law or equity exists." *Akin, Gump, Strauss, Hauer and Feld, L.L.P.*, 2003 Tex. App. LEXIS 3966, at *11 (citing *Parr v. First State Bank of San Diego*, 507 S.W.2d 579, 583 (Tex. App.—San Antonio 1974, no writ)). But when a receiver is appointed pursuant to Section 64.001(a) of the Texas Civil Practice and Remedies Code, "the party seeking appointment of a receiver need not show that no other adequate remedy exists." *See id.* (citing *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 136 S.W.2d 800, 806 (Tex. 1940)); *see also In re Estate of Trevino*, 195 S.W.3d 223, 231 (Tex. App.—San Antonio 2006, no pet.) (stating that under Section 64.001(a), it is not necessary to show that "no other adequate remedy exists").

In this case, no party opposed or timely filed an interlocutory appeal from the probate court's initial order appointing the receiver, and in its July 2023 order, the probate court ordered that the receiver "shall continue as receiver under the terms of the Court's Order

---

[5] As support for his position that the continuation of the receivership is harming the trust and Nancy, Mike relies on documents that he attached to a motion that he filed with the probate court in September 2023 seeking to dissolve and/or terminate the post-judgment receivership. Because that motion with its attachments was not filed until after the probate court signed the July 2023 order that Mike challenges in this appeal, we do not consider those documents in our analysis.

Appointing Receiver dated April 25, 2023 pending final resolution of the appeal." *See Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 Tex. App. LEXIS 8872, at *72 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem. op.) (observing that "Court has also held that the failure to file an appeal from the order establishing a receivership within twenty days requires dismissal of complaints that 'test the validity' of the receivership itself" and concluding that court lacked jurisdiction to address trial court's initial appointment of receiver); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(a)(1) (authorizing interlocutory appeal from order appointing receiver).

In its initial order appointing the receiver, the probate court cited Section 64.001 *et. seq.*, and Subsection (a)(6) authorizes a court to appoint a receiver "in any other case in which a receiver may be appointed under the rules of equity." Tex. Civ. Prac. & Rem. Code § 64.001(a)(6). The initial order also included detailed findings concerning the necessity of the receivership. The probate court found that the appointment was necessary to protect the parties' rights with regard to the trust, to ensure the assets of the trust estate were preserved and protected, and to ensure that "the obligations of the Trust are fulfilled, and that the primary beneficiary, Nancy Bogle, receives the distributions to which she is entitled." The court also found that "[t]he parties will suffer irreparable injury unless a receiver is appointed because . . . [i]f a receiver is not appointed, there will be no person who can make distributions to or for the benefit of [Nancy], and there will be no person who can pay the Trust expenses and obligations, putting the Trust Estate at risk."

Because the ongoing management of the trust and its assets is required during the appeal, enforcement of the final judgment has been suspended pending appeal, and the parties' dispute concerns who are the valid successor co-trustees, the probate court reasonably could have

11

found that it was necessary to maintain the receiver on appeal based on the continuing nature of its findings in the initial order appointing a receiver. *See United N. & S. Oil Co. v. Meredith*, 258 S.W. 550, 554 (Tex. App—Austin 1923), *aff'd*, 272 S.W.124 (Tex. Comm'n App 1925, judgment adopted) ("[S]o long as there is an appeal pending," "same right" to receiver exists pending appeal as existed before judgment); *see also Sanders v. Boeing Co.*, 680 S.W.3d 340, 355 (Tex. 2023) (stating that "final" judgment "is not final *in effect*, so long as appellate proceedings are pending seeking a revision of the same" (quoting *Continental Gin Co. v. Thorndale Mercantile Co.*, 254 S.W. 939, 941 (Tex. [Comm'n Op.] 1923)); *Rich v. Cantilo & Bennett, L.L.P.*, 492 S.W.3d 755, 760–61 (Tex. App.—Austin 2016, pet. denied) (explaining that generally "receiver is an officer of the court, 'the medium through which the court acts'" and "a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership" (citing *Security Tr. Co. of Austin v. Lipscomb County*, 180 S.W.2d 151, 158 (Tex. 1944))).

During an appeal of the underlying case, "the trial court has jurisdiction to appoint, control, modify, or otherwise deal with a receivership related to the main case" and the "power to modify an order discharging a receiver and to reinstate or authorize the receiver to act if new circumstances arise after the order discharging the receiver and while the main case in on appeal." *Hill*, 460 S.W.3d at 764 (citing *Chimp Haven, Inc. v. Primary Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no pet.)). And "even after issuing an order discharging a receiver, a trial court has power to continue the receivership if circumstances require." *Id.* (citing *Reardon v. White*, 87 S.W. 365, 367 (Tex. App.—Austin 1905, writ ref'd)).

Because Bass and Smith appealed and superseded the final judgment that declared Mike and Katie the successor co-trustees, Mike argued to the probate court that the "unintended

12

effect" of the court's order allowing suspension of the enforcement of the judgment was to prevent Mike and Katie from acting as co-trustees and to leave the trust "without anyone to act on its behalf." They further asserted that the trust is a "multi-million-dollar Trust," that "[h]undreds of thousands of dollars in income from the corporation need to be deposited into the Trust and distributed for Nancy's benefit," and that "[s]omeone needs to man the ship during the pendency of the appeal." Bass and Smith also presented evidence about the need for ongoing management of the trust assets during the appeal, such as the payment of property taxes, depositing checks, and paying other past-due amounts concerning trust property.

On this record, we conclude that there was some evidence of a substantive and probative character to support the trial court's decision to withdraw its order terminating the receivership and to order the receiver to serve until final resolution of the appeal.[6] *See In re Estate of Price*, 528 S.W.3d at 593. Thus, we conclude that the probate court did not abuse its discretion when it withdrew its order terminating the receivership and ordered the receiver to serve until final resolution of the appeal.[7] *See Hill*, 460 S.W.3d at 764.

---

[6] To the extent that Mike argues that Bass and Smith were required to present evidence that property was in "danger of loss or removal" to be entitled to relief under Section 64.001(a)(6), this argument cannot be squared with the plain language of Section 64.001(b), which expressly limits this evidentiary requirement to orders entered under Subsections (a)(1)–(3). *See* Tex. Civ. Prac. & Rem. Code § 64.001(b).

[7] As support for his position that the probate court abused its discretion, Mike relies on the probate court's comments during the hearing in which the court notified the parties that it would continue the receivership. Those comments, however, do not impact our analysis under the applicable standard of review. *See In re Estate of Price*, 528 S.W.3d 591, 593 (Tex. App.—Texarkana 2017, no pet.). In his reply brief, Mike also argues that the grounds for the receivership became "mostly, if not entirely, moot" when Nancy died, but he concedes that the distribution of a portion of the Company shares held in the trust remains in dispute, and he does not dispute that someone needs to manage the trust estate pending appeal. In the related appeal, Mike filed a suggestion of death, informing this Court that Nancy died on or about February 25, 2024.

13

## CONCLUSION

For these reasons, we overrule Mike's issues and affirm the probate court's July 2023 order granting appellees' motion to modify order terminating receivership.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   July 18, 2024